# COOS,

## JANUARY TERM, A. D. 1859.

### STATE *v.* HOLMES.

A license to sell spirituous liquors, granted under the act of 1849, gave no vested right, and was revoked and annulled by the repeal of that statute before the expiration of the time limited in the license.

INDICTMENT, for selling intoxicating liquors contrary to the statute of 1855. On trial, it appeared that the sale was made in October, 1855. The defendant produced a license, dated June 18, 1855, signed by the selectmen of the town in which the sale was made, authorizing him "to sell wine and spirituous liquors, for medicinal, mechanical and chemical purposes, and no other use or purpose, until the first day of April next." Objection was made to this evidence, upon the ground that the statute authorizing such license was repealed before the sale, by the act of 1855. The court ruled that the license was no defence, and the defendant excepted. A verdict of guilty was taken, by consent, subject to the foregoing exception.

*Sullivan*, Attorney-General, for the State.

*Burns & Fletcher*, for the defendant.

PERLEY, C. J. The license under which the defendant justified his sale of spirituous liquors was granted under

the statute of 1849; the sale was made after that statute was repealed by the act of 1855, and before the time limited in the license had expired. The statute of 1855 enacted that it should be unlawful and criminal to sell spirituous liquors contrary to the provisions of that statute, and punished the unlawful sale with a penalty. The terms of the act leave no room to doubt that the intention of the legislature was to prohibit all sales of spirituous liquors not authorized by the provisions of the act. The ground taken for the defendant is that a license, granted under the statute of 1849, gave the party licensed a vested right to sell according to the license, until the expiration of the time limited in it; and that, consequently, it was beyond the power of the legislature to revoke and annul licenses granted under that act.

Under the Revised Statutes, the town-clerk had a fee of twenty cents for recording a taverner's or retailer's license. I find no express provision of any statute which requires a fee to be paid for recording a license, under the act of 1849; but it was necessary that licenses under that act should be recorded, and it may be fairly implied that the fee was to be paid as under the former statute, and paid by the party who took the license.

The argument for the defendant has been placed on the ground that this fee of twenty cents, to which the clerk is entitled for recording the license, is to be regarded as a pecuniary consideration, paid for the right to sell during the time limited in the license; that a contract is made on that consideration between the State and the party licensed, giving a vested right which is protected on general principles, and by the Constitution of the United States, against subsequent legislation. We are not able to agree in this view of the question.

The selectmen of towns were required by the statute of 1849 to *license* one or more persons in each town to sell wine and spirituous liquors for certain specified purposes.

*License* is the term used in the act, and that word is a term of the law having a definite legal signification. It is an essential ingredient of a legal license, that it confers no right, or estate, or vested interest, but is at all times revocable at the pleasure of the party that grants it. Nor has the word any popular use which differs from the legal definition. In both the legal and popular sense, the term *license* implies no right or estate conveyed or ceded, no binding contract between parties, but mere leave and liberty, to be enjoyed as matter of indulgence, at the will of the party who gives the license. The language and phraseology of the statute strongly negative the idea of any intention on the party of the legislature to make a bargain or contract with the party licensed, or to convey or concede any vested right or interest in the nature of an exclusive privilege to sell intoxicating liquors.

The statute under which the license was granted was a general law, applicable to all towns, and intended to establish a uniform system for the regulation of the traffic in spirituous liquors throughout the State; and selectmen, in granting the licenses, acted as public officers, charged with the duty of carrying this general law into effect. They were required to license one or more suitable persons in their respective towns; and under the act of 1855, providing for the appointment of agents to sell spirituous liquors, it was held, in *State* v. *Woodbury, et als.,* selectmen of Wilmot, 35 N. H. 230, that it was the duty of selectmen to appoint agents under that statute, and that selectmen were liable to indictment for wilful neglect to perform this official duty. The provisions of the statute plainly show that the object was to provide, by a general law, on the public account and on public considerations, for the regulation of the trade in spirituous liquors, and not to make contracts with individuals, giving them vested rights beyond the reach of subsequent legislation.

The subject matter of the law is one of general public concern. The power of the legislature to make such reasonable provisions as may from time to time be thought most expedient to prevent abuse in the sale and use of intoxicating liquors, is too clear for doubt. Our Bill of Rights expressly recognizes "temperance" by name, as one of the objects for which the government was established. It is quite impossible to suppose that the legislature could have intended to put it in the power of individuals, under color of a vested right in the licenses granted by virtue of a general law on a subject of such universal concern, to dispute the authority of the legislature to change at once the system of law on that subject, if they should deem that the public good required it. The manifest design of the statute was to place the trade in spirituous liquors under public regulation, for the purpose of advancing temperance and good morals in the State. It could have been no part of the legislative intention to give a privilege in the nature of a monopoly to the party who took a license under the act.

If we could suppose that the legislature intended to surrender the control which the Constitution entrusts to them, over a subject of such general public concern, by granting vested rights to individuals trammelling future legislation, their power to do so is more than doubtful. If binding contracts could be made, conferring a vested right to sell for one year, why not for two years, or any indefinite length of time? There is a strong opinion on this question in *Baxter* v. *Pennsylvania,* 10 How. 416. In that case Mr. Justice *Daniel* says: "The contracts designed to be protected by the 10th section of the 4th article of the Constitution, are contracts by which perfect rights of property are vested. They are clearly distinguishable from measures or engagements adopted or undertaken for the body politic or State government, for the benefit of all, and from the necessity of the case, and according to universal understanding, to be varied and discontinued as the public good

shall require." Further on, he says these powers of general legislation on public subjects are "functions which government cannot be presumed to have surrendered, if indeed they can under any circumstances be justified in surrendering them." *Gutzweller* v. *The People*, 14 Illinois 142, is an authority to the point that laws for licensing the sale of spirituous liquors are, on account of their general character, subject to repeal, though the fees paid for licenses granted under them were appropriated by the law to a particular object.

In *Horn* v. *The State*, 1 Ohio 15, the defendant in the original prosecution was licensed, under the Ohio statute of 1831, for one year, and had paid for his license, under the provisions of that statute, fifteen dollars into the county treasury. Yet the court in that case say they are not disposed to question the power of the legislature to revoke the license before the expiration of the year; and this opinion they place on the ground that the subject matter of the statute was connected with the public policy of the State. In that case there was much stronger reason than in the present for holding that a pecuniary consideration was paid for the license, and a contract made with the public, which conferred a vested right; for fifteen dollars were paid into a public treasury, under the Ohio statute, and nothing but an insignificant office-fee under ours.

The recently published case of *Calder* v. *Kurby*, 5 Gray 597, would seem to be an authority precisely in point. In that case a fee of one dollar was paid, under the Massachusetts statute, on taking a license to sell till April 1, 1853. The sale was made before the expiration of the time limited in the license, and after the repeal of the statute under which the license was granted, and the enactment of a law prohibiting sales under such licenses. The court held that the license was annulled and revoked by the subsequent legislation.

---
State *v.* Holmes.
---

The payment of a trifling office-fee for recording the license, is not, as it appears to me, at all inconsistent with the notion of a mere license, revocable at the will of the legislature. The sale of intoxicating liquors was made the subject of a general law; to put the law in operation, the selectmen of towns were required to grant licenses; and the sellers thus required to be licensed, are in the nature of public agents, appointed under the law to carry it into effect. So far as the present question is concerned, I am not able to perceive any distinction in principle between their case and that of any public officer; such, for instance, as a school commissioner, who takes his commission from the governor, under a general statute, which limits his term of office to a certain number of years. The law requires him to take his commission and pay one dollar for it to the secretary of State. In the case of the commission and the license, the law is general, on a subject of public concern; and in both cases a fee is required to be paid for perfecting the evidence of the authority under which the party who pays the fee acts. In both cases we must suppose the fee is voluntarily paid, with a full understanding that the official authority in one case, and the license in the other, are derived under general laws which, in their essential character, are subject to be repealed or modified by the legislature, as the public good may demand; and in neither case is there anything at all in the nature of a contract with the State conferring a vested right, such as is protected by the Constitution of the United States.

This question arose incidentally in *Adams* v. *Hackett*, 27 N. H. (7 Fost.) 289; but the point does not appear to have been material to the decision of that case; and we do not feel pressed by that authority, as we should if the question had been there presented in a way which called upon the court to give it a careful and extensive examination.

State *v.* Holmes.

Our conclusion is, that a license to sell spirituous liquors, granted under the statute, though an office fee was required to be paid for recording it, is, nevertheless, in character and legal effect, as well as in name, a mere license, and not a binding contract, or the cession of a vested right; that the license in the present case was revoked and annulled by the repeal of the statute under which it was granted, and the enactment of another statute which made the sale of spirituous liquors under such license unlawful.

*Judgment on the verdict.*