1999 UT 53

**STEINER CORPORATION, Petitioner,**

v.

**AUDITING DIVISION OF THE UTAH STATE TAX COMMISSION, Respondent.**

**No. 980016.**

Supreme Court of Utah.

May 25, 1999.

---

William H. Adams, Peter W. Billings, Salt Lake City, for petitioner.

Jan Graham, Att'y Gen., Brian L. Tarbet, Clark Snelson, Asst. Att'ys Gen., Salt Lake City, for respondent.

STEWART, Justice:

¶ 1 Steiner Corporation filed a writ of review from a Utah State Tax Commission decision issued December 15, 1997 (the "1997 Decision"),[1] holding that a loss from Steiner's sale of its subsidiary corporation, Steiner Financial, was only partially deductible from Steiner's income because Steiner and Steiner Financial were a unitary business. Steiner argues that the 1997 Decision is arbitrary and capricious because it (1) is contrary to a controlling 1987 Commission decision (the "1987 Decision"),[2] and (2) applied retroactively. We affirm.

## I. BACKGROUND

### A. Uniform Division of Income for Tax Purposes Act ("UDITPA")

¶ 2 This case requires a short explanation of Utah corporate income tax under the UDITPA, Utah Code Ann. tit. 59, ch. 7, pt. 3 (1987).[3] This Act applies to corporations

---

1. Tax Commission Decision, Appeal No. 95–1889 (decided Dec. 15, 1997).

2. Tax Commission Decision, Appeal No. 84–1111 (decided June 5, 1987).

3. Unless otherwise mentioned, identical statutory sections to the sections cited in this opinion were previously found at Utah Code Ann. § 59–13–78 to –97 (1974), which were in force when the events underlying the 1987 Decision occurred.

The UDITPA, 7A U.L.A. 356 (1999), was approved in 1957 for use by states that tax corporate citizens on net income. Many corporations earn income from business activities in more than one state. The purpose of the UDITPA is to

that receive income from business activities in more than one state. Like many states, Utah distinguishes between the business and nonbusiness income of such corporations. Business income arises "from transactions and activity in the regular course of the taxpayer's trade or business." *Id.* § 59–7–302(1). All income is presumed business income "unless clearly classifiable as nonbusiness income." Utah Admin. Code R.865–08F–1(A) (1987). Nonbusiness income is "all income other than business income," Utah Code Ann. § 59–7–302(7), and is "narrowly construed." Utah Admin. Code R.865–08F–1(A)(1). A corporation that is incorporated in Utah or that has its principal place of business in Utah must pay a franchise tax in Utah. *See* Utah Admin. Code R.865–6F–1(A) (1997); *see also* Utah Code Ann. §§ 59–7–101(5), –102. This tax is based on all of its nonbusiness income and a portion of its business income. *See* Utah Code Ann. §§ 59–7–306, –308, –311. The portion of business income that is taxed is based on a statutory apportioning formula. *See id.* § 59–7–311. Conversely, when losses occur, such a corporation may deduct from its income the entire amount of a nonbusiness loss and a portion of a business loss. *See id.* §§ 59–7–108(5), –306, –308.

¶ 3 It is undisputed that a corporation's gain or loss from the sale of stock of a subsidiary is treated as a business income gain or loss if the corporation and the subsidiary are a "unitary business." Before 1986, neither the Code nor the Commission's Rules defined "unitary business," but the Commission considered "commonly used" factors such as centralization of management, functional integration, common ownership, and economies of scale, to determine if a parent

and a subsidiary operated a unitary business. *See* 1987 Decision at 4–5.

¶ 4 In 1986 the Legislature included a definition of "unitary business" in Utah Code Ann. § 59–7–302(15) (1987):

(a) "Unitary business" and "unitary group" are interchangeable and mean two or more corporations related through common ownership whose business activities are integrated with, dependent upon, and contribute to each other.

(b) "Unitary business" or "unitary group" does not include any corporation related by stock ownership or otherwise to any corporation liable to report under §§ 59–7–301 through 59–7–321 whose principle business activities relate to a separate and distinct line of business.

Utah Code Ann. § 59–7–302(15). This definition is specific to the UDITPA.[4]

*B. Facts*

¶ 5 The parties stipulated to the following facts unless otherwise stated. Steiner is a Nevada corporation with its principal place of business in Utah. It is in the linen supply business and has owned subsidiaries that operated a variety of businesses. In 1982 Steiner sold its subsidiary American Savings & Loan for a $9,545,223 gain. On its 1982 Utah tax return, Steiner reported this gain as "business income" and paid Utah taxes on only a portion of that income. The Auditing Division disagreed and ordered Steiner to pay tax on the entire gain.

¶ 6 Steiner appealed. On June 5, 1987, after a formal hearing, the Commission sustained the Auditing Division and held that Steiner and American Savings were not a unitary business and that Steiner's gain was therefore nonbusiness and fully taxable. Relying on the nonstatutory standards stated

---

provide a unified method of dividing a corporation's income among states in which it earns income so that the corporation is truly taxed on its net income. Utah adopted the UDITPA in 1967. *See* 1967 Utah Laws ch. 158.

4. In 1993, the Legislature repealed section 59–7–302(15) and enacted section 59–7–101(27). This section is virtually identical to the standard stated in the 1987 Decision and is applicable to the entire corporate income tax chapter, title 59, chapter 7. Section 101(27) provides:

"Unitary group" means a group of corporations that:
(a) are related through common ownership; and
(b) are economically interdependent with one another as demonstrated by the following factors:
(i) centralized management;
(ii) functional integration;
(iii) economies of scale.
Utah Code Ann. § 59–7–101(27) (Supp.1993).

above, ¶ 3, the Commission found that the corporations shared common ownership but not centralized management, functional integration, economies of scale, and significant flow of value between themselves. Because the Commission ruled that Steiner and American Savings were not a unitary business, Steiner had to pay tax on the entire gain from the American Savings sale. Steiner appealed to district court.

¶ 7 In November 1990 the district court held, contrary to the Commission, that Steiner and American Savings were a unitary business and therefore the gain from the sale of American Savings was not fully taxable. The court applied the same standards the Commission had used; however, it found that the corporations shared centralized management, functional integration, economies of scale, and a significant flow of value between themselves. The district court reversed the Commission's 1987 Decision, required the Commission to recalculate Steiner's 1982 tax liability, and ordered it to refund to Steiner excess taxes, penalties, and interest. The Commission did not appeal and complied with the district court decision.

¶ 8 In 1988, after the 1987 decision but before the district court decision, Steiner sold another subsidiary, Steiner Financial,

for a $46,566,528 loss. Steiner treated itself and Steiner Financial as a nonunitary business and deducted the entire amount from its 1988 income as a nonbusiness loss. Steiner alleges that it relied on the 1987 Decision in treating itself and Steiner Financial as a nonunitary business. On appeal, Steiner and the Commission stipulated that the relationship between Steiner and American Savings was approximately the same as the relationship between Steiner and Steiner Financial. The Commission ruled in December 1997 that neither the prior district court decision nor its own 1987 Decision was binding. In accord with the stipulation and the Commission's order on remand after the 1989 district court decision, but contrary to its position in the 1987 Decision, the Commission concluded that Steiner and Steiner Financial operated as a unitary business, that the $46,566,528 loss realized by Steiner from the sale of Steiner Financial was a business loss, and that the loss was only partially deductible.[5] Steiner filed a writ of review from this Court.[6]

¶ 9 Steiner argues that the 1997 Decision is arbitrary and capricious under the Utah Administrative Procedures Act, Utah Code Ann. § 63–46b–16(4)(h)(iv),[7] because that decision

---

5. The Commission stated:

Whether [Steiner and Steiner Financial] were separate or unitary depends upon the manner in which the business was conducted and the level of integration between them. The parties in this matter presented no evidence as to the nature of [their] operations. Both parties stipulated that the relationship between [Steiner and American Savings] was approximately the same as the relationship between [Steiner] and Steiner Financial.... On that basis, we assume the following facts to be true:

1. During the audit period [Steiner] owned all or nearly all of the Steiner Financial stock.

2. An officer of [Steiner] corporation served as a director of Steiner Financial and had veto power over Steiner Financial's corporate decisions.

3. [Steiner] exercised some control over the financial matters of Steiner Financial relating to budgeting, audits, tax preparation, and financial reporting.

4. During the audit period and in previous tax years, [Steiner] held a number of subsidiaries engaged in the financial services industry. Equity and income from these sub-

sidiaries comprised a substantial portion of [Steiner's] operations.

5. [Steiner] and Steiner Financial shared a common pension plan and executive bonus plan.

Under Utah Code section 59–7–302(15)(a) (Supp.1988), [Steiner] and Steiner Financial comprised a unitary business if they were related through common ownership and their business activities were integrated, dependant and contributed to each other.... On the basis of [the above] facts, we find sufficient interdependence between [Steiner] and Steiner Financial to treat the operations as a unitary business.

1997 Decision at 7–8.

6. Utah Code Ann. § 63–46b–16(1) (1997) grants the Supreme Court appellate jurisdiction, "[a]s provided by statute ... to review all final agency action resulting from formal adjudicative proceedings." Utah Code Ann. § 78–2–2(3)(e)(ii) grants this Court jurisdiction to review Commission decisions.

7. This section states:

(4) The appellate court shall grant relief [on appeal from a formal agency adjudicative deci-

is inconsistent with the 1987 Decision in ruling that Steiner and Steiner Financial conducted a unitary business, which meant that the loss was a business loss and therefore only partially deductible. Steiner argues that the 1987 Decision controls as a matter of stare decisis with respect to whether Steiner operated a unitary business, and that the Commission therefore violated Utah Code Ann. § 63–46b–16(4)(h)(iii) [8] because the 1997 Decision is contrary to "the agency's prior practice," and the Commission did not "justif[y] the inconsistency." *Id.* Steiner also argues that the 1987 Decision established a Commission "policy" that subsequent agency decisions were obligated to follow and any change of that policy required formal rule making procedures. Finally, Steiner argues that the 1997 Decision is arbitrary and capricious because it changed agency law retroactively. Steiner does not directly contest the merits of the 1997 Decision; namely, whether the Commission correctly determined, aside from the 1987 Decision, that it operated as a unitary business with Steiner Financial.

## II. PRECEDENTIAL EFFECT OF AN OVERRULED AGENCY DECISION

¶ 10 Review of the 1997 Decision raises the question whether an administrative decision that is reversed by a court on appeal binds an agency in later administrative decisions. *Salt Lake Citizens Congress v. Mountain States Telephone & Telegraph Co.*, 846 P.2d 1245 (Utah 1992), answers that question negatively.

¶ 11 *Mountain States* held that rules established in formal agency adjudications have the force of stare decisis in future agency decisions:

> sion] only if, on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced by any of the following:
> ...;
> (h) the agency action is:
> ...;
> (iv) ... arbitrary and capricious.
> *Id.* § 63–46b–16(4)(h)(iv).

8. This section states:
    (4) The appellate court shall grant relief [on appeal from a formal agency adjudicative decision] only if, on the basis of the agency's rec-

The adjudication of every case requires the application of one or more rules of law. A rule of law, whether pre-existing or newly established, that serves as the major premise of an adjudicatory syllogism, necessarily governs all subsequent cases properly falling within the scope of the rule. This is so even when the particular facts in subsequent cases are different and res judicata does not apply.

*Id.* at 1252.

¶ 12 *Mountain States* stands for the proposition that it would be arbitrary and capricious for an agency to apply a different rule of law in a future case with similar facts. *See id.* at 1252. It is as arbitrary and capricious to apply the same law to the same facts and reach a different result as it is to apply a different rule in a factually similar situation. Simply put, "*Stare decisis* means that like facts will receive like treatment in a court of law." *Flowers v. United States*, 764 F.2d 759, 761 (11th Cir.1985); *see also Topps–Toeller, Inc. v. City of Lansing*, 47 Mich.App. 720, 209 N.W.2d 843, 848 (1973); *State v. McBride*, 120 N.C.App. 623, 463 S.E.2d 403, 405 (1995). The holding of an agency adjudication, or the application of a rule of law to the facts in that case, binds an agency in subsequent decisions under *Mountain States*.

¶ 13 Nevertheless, agency precedent is subject to reversal. As *Mountain States* held, "the Commission [could] specifically overrule[ ] the decision or the decision [could be] changed or set aside by formal rule, statute, *or court decision.*" *Mountain States*, 846 P.2d at 1253 (emphasis added). If reversed, the holding would no longer have stare decisis effect. That is what has oc-

> ord, it determines that a person seeking judicial review has been substantially prejudiced by any of the following:
> ...;
> (h) the agency action is:
> ...;
> (iii) contrary to the agency's prior practice, unless the agency justifies the inconsistency by giving facts and reasons that demonstrate a fair and rational basis for the inconsistency....
> *Id.* § 63–46b–16(4)(h)(iii).

curred in this case. The district court decision overruled the 1987 Decision; therefore, Steiner's argument that the 1987 Decision controls this case under stare decisis fails.

¶ 14 Steiner's section 63–46b–16(4)(h)(iii) argument fails for the same reason. Under that section, an "appellate court shall grant relief only if . . . (h) the agency action is . . . (iii) contrary to the agency's prior practice, unless the agency justifies the inconsistency by giving facts and reasons that demonstrate a fair and rational basis for the inconsistency." It is true that the 1997 Decision is inconsistent with the 1987 Decision; however, the 1997 Decision is consistent with the 1990 district court decision reversing the 1987 Decision and with the Commission's subsequent refund of Steiner's taxes on remand from the district court. In short, the Commission's ruling in the 1997 Decision that Steiner and Steiner Financial were a unitary business is wholly consistent with its adoption of the district court decision and its refunding Steiner's taxes after the appeal from the 1987 Decision.

¶ 15 Steiner in effect rejects the portion of the above analysis that is based on the district court's reversal of the 1987 Decision. Steiner argues that under rule 4–508(1) of the Utah Rules of Judicial Administration, the district court decision, an unpublished memorandum opinion, has "no precedential value," cannot "be cited or used . . . except for purposes of applying the doctrines of the law of the case, res judicata, or collateral estoppel," id., and therefore should be wholly ignored in this case.[9] We do not decide whether the doctrine of law of the case, res judicata, or collateral estoppel require that the 1989 district court decision be given binding effect in the Commission's 1997 Decision. Nevertheless, it is critical that Steiner and the Commission stipulated that the facts underlying the 1997 Decision are "substantially" the same facts that underlay the 1987 Decision. It necessarily follows that those same facts underlay the 1990 district court decision and the Commission's decision on remand from the district court decision. Thus, given the stipulation, and irrespective of whether the precise requirements of res judicata, collateral estoppel, or law of the case are met, the fact of the unitary nature of Steiner's and Steiner Financial's business has in effect been adjudicated between the Commission and Steiner, and for that reason the district court decision legitimately has a direct bearing on the 1997 Decision.

¶ 16 Furthermore, we cannot ignore the additional fact that, apart from the 1990 district court opinion itself, the Commission's 1997 Decision is consistent with the Commission's action following the district court remand. By not appealing that decision, the Commission itself, in effect, acceded to it. After the district court decision, the Commission treated Steiner and American Savings as a unified business and refunded Steiner's excess 1982 taxes. The Commission action clearly and necessarily rested on the district court's conclusion that Steiner and American Savings were a unified business. The Commission's 1997 Decision, which treated Steiner and Steiner Financial as a unified business also, was totally consistent with the Commission's actions after the district court reversed the 1987 Decision.

¶ 17 Finally, Steiner argues that under *Williams v. Public Service Commission,* the Commission could not "reverse its long-settled position [i.e., the 1987 Decision] . . . and announce a fundamental policy change without following the requirements of the Utah Administrative Rule Making Act." 720 P.2d 773, 777 (Utah 1986). In *Williams,* the Court set aside a Public Service Commission ("PSC") decision that was contrary to law the PSC had previously applied. *See id.* at 776. However, *Williams* is inapplicable here. It was not the Commission but the district court that reversed the 1987 Decision. The 1997 Decision is consistent with its relevant prior practice.

¶ 18 In conclusion, the Commission's decision was not arbitrary and capricious. Affirmed.

---

9. A primary purpose of rule 4–508 is to assure that all persons have access to court decisions that state the law. Only a very limited group of people have access to unpublished decisions.

Clearly Steiner, as a party to the district court decision, had access to and knowledge of that decision.

¶ 19 Chief Justice HOWE, Associate Chief Justice DURHAM, Justice ZIMMERMAN and Justice RUSSON concur in Justice STEWART's opinion.