2002 UT App 5

Keith W. BOURGEOUS, Plaintiff and Appellant,

v.

STATE of Utah, DEPARTMENT OF COMMERCE, Defendant and Appellee.

No. 20000780–CA.

Court of Appeals of Utah.

Jan. 10, 2002.

Cass C. Butler, Callister, Nebeker & McCullough, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and William Loos, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before JACKSON, P.J., and GREENWOOD and ORME, JJ.

## OPINION

GREENWOOD, Judge:

¶ 1 Keith Bourgeous appeals the trial court's ruling affirming the Utah Department of Commerce's (the Department) decision denying him a professional engineer's license for failure to meet the Department's educational requirements. Bourgeous argues the trial court should not have affirmed the Department's decision because (1) Bourgeous's engineer-in-training certificate meant that he irrevocably met the education requirements for licensure, and (2) the Department violated the Utah Administrative Pro-

cedures Act. We conclude the trial court correctly affirmed the Department's decision.

## BACKGROUND

¶ 2 On June 9, 1989, Bourgeous graduated from Weber State University with a Bachelor of Science degree in Electrical Engineering Technology. At that time, Weber State was accredited by the Technology Accreditation Commission/Accreditation Board of Engineering and Technology (TAC/ABET), but was not accredited by the Engineering Accreditation Commission/Accreditation Board of Engineering and Technology (EAC/ABET). After graduation, Bourgeous was eligible to take the Fundamentals of Engineering (FE) exam. Bourgeous passed the FE exam and was issued an engineer-in-training certificate (the Certificate).

¶ 3 Once Bourgeous obtained the Certificate, he began working towards the four years of work experience required to obtain a license. However, Bourgeous's employer could only provide part-time experience, so it took eight years to complete the equivalent of four years of full-time experience. During these eight years, the legislature amended the statutes regulating licensing requirements, but Bourgeous did not believe that the changes would affect him since he held the Certificate.

¶ 4 Bourgeous took and passed the Principles of Engineering (PE) exam in April 1997. Bourgeous completed his work experience and applied for licensure in September 1997. The Department denied Bourgeous's application because his educational qualifications were no longer valid under the current licensing criteria. See Utah Code Ann. § 58–22–302 (Supp.2001); [1] Utah Admin. Code R156–22–201, –202, –204 (2001). Bourgeous administratively appealed the Department's decision without success.

¶ 5 Bourgeous appealed the Department's decision to the Third District Court in January 1998. Bourgeous filed a motion for summary judgment, which was denied. After denying Bourgeous's motion for summary

---

1. Because no substantive changes occurred between the passage of the 1996 Act and the current version, we cite the current version.

judgment, the trial court certified the issues for appeal under Rule 54(b) of the Utah Rules of Civil Procedure. This appeal followed.

### ISSUES AND STANDARD OF REVIEW

■ ¶ 6 Bourgeous's primary argument is that the Certificate created a vested, statutory right that could not be revoked. Because statutory interpretation is an issue of law, we review this argument for correctness. *See Rushton v. Salt Lake County,* 1999 UT 36, ¶ 17, 977 P.2d 1201.

■ ¶ 7 Bourgeous also argues that the trial court erred in failing to rule that the Department violated the Utah Administrative Procedures Act by (1) erroneously interpreting or applying the law, and (2) arbitrarily and capriciously treating Bourgeous differently than other similarly situated professional engineer applicants. When a statute grants discretion to an agency to interpret and apply the law, this court reviews the agency interpretation and application for reasonableness. *See Tasters Ltd. v. Department of Employment Sec.,* 863 P.2d 12, 19 (Utah Ct.App.1993). Finally, "We review claims that an agency action was arbitrary and capricious for reasonableness." *Anderson v. Public Serv. Comm'n,* 839 P.2d 822, 824 (Utah 1992).

### ANALYSIS

#### I. STATUTORY BACKGROUND

¶ 8 This case involves three different versions of the Professional Engineers Licensing statute. *See* Utah Code Ann. § 58–22–5 (1986) (the 1986 Act); Utah Code Ann. § 58–22–5 (1992) (the 1992 Act) (repealed before taking effect); Utah Code Ann. § 58–22–302 (Supp.2001) (the 1996 Act). The 1986 Act was in effect when Bourgeous graduated from Weber State University in 1989. Under the 1986 Act, an applicant must have graduated with a Bachelors degree from either a TAC/ABET or an EAC/ABET accredited university before applying for professional licensure. *See* Utah Code Ann. § 58–22–5(2)(a)(i); Utah Admin. Code R.153–22–2(a)(1)(a) (1989). After graduation, an appli-

cant could take the FE exam. *See* Utah Code Ann. § 58–22–5(2)(b) (1986). After passing the FE exam, an applicant received the Certificate, which entitled him or her to begin the required four years of work experience. *See id.* § 58–22–5(3).` Upon completing the four years of work experience, an applicant could take the PE exam. *See id.* § 58–22–5(3)(c). Upon passing the PE exam, an applicant could apply for licensure as a professional engineer. *See id.*

¶ 9 In 1992, the legislature substantially changed these requirements. Under the 1992 Act, the legislature expressly stated that a degree from an EAC/ABET university was the only degree that would suffice for licensure. *See* Utah Code Ann. § 58–22–5(2)(a), (9) (1992). The University of Utah and Utah State University were the only Utah universities accredited by the EAC/ABET. Because this change would affect many TAC/ABET graduates, the legislature delayed the effective date of the 1992 Act until July 1, 1996. *See id.* § 58–22–5(2), (9). However, if a TAC/ABET graduate failed to complete all of the requirements of the 1986 Act before July 1, 1996, he or she would have to return to school and obtain an engineering degree from an EAC/ABET university. *See id.* § 58–22–5(9).

¶ 10 Shortly before the 1992 Act was to take effect, the legislature repealed it and replaced it with the 1996 Act. Under the 1996 Act, the legislature expressly granted the Department discretion to decide which degrees would be acceptable for professional licensure. *See* Utah Code Ann. § 58–22–302(2)(d) (Supp.2001). The Department's rules, promulgated pursuant to section 58–22–302(1)(d), allow only an EAC/ABET degree for licensure. *See* Utah Admin. Code R156–22–201 (2001). The legislature also granted the Department discretion to determine the qualifying experience and exam requirements necessary for licensure. *See* Utah Code Ann. § 58–22–302(1)(e), (f) (Supp. 2001). Pursuant to section 58–22–302(1)(f), the Department requires successful completion of both the FE and the PE exams for full licensure. *See* Utah Admin. Code R156–22–204. All of the requirements of the 1996 Act took effect July 1, 1996.

¶ 11 To illustrate the differences between each statutory scheme, we provide the following table explaining the requirements for licensure under each statutory version.

| The 1986 Act § 58-22-5 (1986) | The 1992 Act § 58-22-5 (1992) (repealed before taking effect) | The 1996 Act § 58-22-302 (Supp. 2001) |
|---|---|---|
| Prior to July 1, 1996 all applicants must:<br><br>1. Graduate from a TAC/ABET or EAC/ABET accredited college or university with an engineering degree.<br><br>2. Pass the FE exam.<br><br>3. Obtain the Certificate<br><br>4. The Certificate authorized the holder to complete the required four years of progressive experience. The Certificate was not renewable and was good for 10 years.<br><br>5. Complete four years of progressive experience.<br><br>6. Pass the PE Exam.<br><br>7. Apply for licensure. | Effective July 1, 1996 all applicants must:<br><br>1. Graduate from an EAC/ABET accredited university with an engineering degree.<br><br>2. Pass the FE exam.<br><br>3. Complete four years of qualifying experience.<br><br>4. Pass the PE Exam.<br><br>5. Apply for licensure.<br><br>6. All individuals who graduated from a TAC/ABET accredited school must obtain an EAC/ABET degree. However, TAC/ABET graduates could still take the FE exam. | Effective July 1, 1996 all applicants must:<br><br>1. Graduate from an engineering program that meets the accreditation requirements of the Department. The Department requires graduation from an EAC/ABET accredited university.<br><br>2. Complete the qualifying experience requirements set by the Department. The Department requires four years of experience.<br><br>3. Pass all the examinations required by the Department. The Department requires both the FE and PE exams for full licensure.<br><br>4. Apply for licensure. |

## II. THE CERTIFICATE

¶ 12 Bourgeous contends that once the Department issued him the Certificate, he had a vested, statutory right that prevented the legislature from changing the education requirements to Bourgeous's detriment.[2] Under the 1986 Act, the Department was required to issue the Certificate to an applicant who obtained an engineering degree from a TAC/ABET accredited university and passed the FE exam. *See* Utah Code Ann. § 58–22–5(2) (1986). Because Bourgeous graduated from a four-year curriculum that was approved by the Department, Bourgeous was properly issued the Certificate.

■ ¶ 13 Under the 1986 Act, an applicant for a professional engineer's license must hold the Certificate, complete four years of experience, and pass the PE exam before applying for licensure. Bourgeous contends that because he met the educational requirements to obtain the Certificate, and because the Certificate was a requirement for licensure, he irrevocably met the education requirements as a matter of law pursuant to section 68–3–5 of the Utah Code. Section 68–3–5 states: "The repeal of a statute does not revive a statute previously repealed, or affect any right which has accrued, any duty imposed, any penalty incurred, or any action or proceeding commenced under or by virtue of the statute repealed." Utah Code Ann. § 68–3–5 (2000). Therefore, Bourgeous argues, since he met the educational requirements under the 1986 Act, he obtained a vested right in the sufficiency of his edu-

2. Bourgeous also argues that he should be treated as a "Professional engineer intern" under the 1996 Act. A "Professional engineer intern" is: [A] person who has completed the education requirements to become a professional engineer, has passed the fundamentals of engineering examination, and is engaged in obtaining the four years of qualifying experience for licensure under the direct supervision of a licensed professional engineer. Utah Code Ann. § 58–22–102(10) (1998). Since the issue in this case is whether Bourgeous "completed the education requirements to become a professional engineer," this argument is not relevant. *Id.*

cational background that the Department could not abrogate after the repeal of the 1986 Act. We disagree.

■ ¶ 14 It is axiomatic that a license does not create any vested rights in its holder because a license is not a contract. *See, e.g., Riggins v. District Court of Salt Lake County,* 89 Utah 183, 51 P.2d 645, 658 (1935); *Chance Mgmt. v. South Dakota,* 97 F.3d 1107, 1119 n. 13 (8th Cir.1996) (stating a license is not a contract and does not create any vested rights in its holder); *Blum v. Ford,* 194 Ark. 393, 107 S.W.2d 340, 344 (1937) ("[A] license is not a contract between the government and the licensee, and it creates no vested rights." (citation and quotations omitted)). In *Riggins,* the Utah Supreme Court stated:

> [A] license is not a contract, it is clear that it does not in itself create any vested right, or permanent right, and that free latitude is reserved by the legislature to impose new or additional burdens on the licensee, or to alter the license, or to revoke or annul it. And this is the general rule notwithstanding the expenditure of money by the licensee in reliance thereon, and regardless of whether the term for which the license was given has expired.

51 P.2d at 658 (citation and quotations omitted). Furthermore, the court stated that because the legislature cannot pass irrepealable legislation, the legislature is free to change licensing requirements to serve the public good. *See id.* Therefore, since Bourgeous's completion of the educational requirements under the 1986 Act cannot create a vested right, section 68–3–5 does not apply as no "right [has] accrued." [3]  Utah Code Ann. § 68–3–5 (2000).

### III. THE ADMINISTRATIVE PROCEDURES ACT

¶ 15 Bourgeous next argues that the Department violated the Utah Administrative Procedures Act in several ways. Utah Code Ann. § 63–46b–16(4) (1997) states:

> The appellate court shall grant relief only if, on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced by any of the following:
>
> . . . .
>
> (b) the agency has acted beyond the jurisdiction conferred by any statute;
>
> . . . .
>
> (d) the agency has erroneously interpreted or applied the law;
>
> . . . .
>
> (h) the agency action is:
>
> . . . .
>
> (iv) otherwise arbitrary or capricious.

*Id.* Since Bourgeous argues that the Department acted beyond its jurisdiction because it misinterpreted the 1996 Act, we analyze this argument in conjunction with our analysis of whether the Department erroneously interpreted or applied the law. Finally, we discuss whether the Department's action was otherwise arbitrary and capricious.

### A. Interpretation and Application ·

¶ 16 Bourgeous argues the Department erroneously interpreted the law for two reasons. First, Bourgeous argues that the repeal of the 1992 Act proves that the legislature meant to change its prior rejection of TAC/ABET degrees for licensure. Second, because the legislature repealed its prior rejection of TAC/ABET degrees, the Department misinterpreted the 1996 Act by not including TAC/ABET degrees in its regulation specifying the education requirements for licensure. These arguments fail.

■ ¶ 17 First, the 1992 Act expressly stated that only EAC/ABET degrees were acceptable for licensure, and that those graduates from a TAC/ABET school must complete an EAC/ABET program to be licensed

---

**3.** Bourgeous attempts to distinguish *Riggins* by saying that *Riggins* dealt with the revocation of an existing license, in that case a liquor license, and not the nullification of a requirement before licensure. Bourgeous claims the Certificate established a right and that the Department retroactively disturbed that right, which is something the legislature never intended to do. In effect, Bourgeous is arguing that those who do not have licenses deserve more protection than those that have licenses. However, Bourgeous provides no legislative history or textual interpretation which would indicate that *Riggins* should be so limited, and such a limitation is not logical.

as professional engineers. *See* Utah Code Ann. § 58–22–5(9) (1992). Bourgeous argues that because the legislature repealed the 1992 Act before it took effect, it necessarily intended to revive its acceptance of TAC/ABET degrees for professional licensure. However, this argument contradicts his previous argument under section 68–3–5, which states, "The repeal of a statute does not revive a statute previously repealed." Utah Code Ann. § 68–3–5 (2000). Hence, when the legislature repealed the statute disqualifying TAC/ABET degrees from licensure, the legislature did not revive its previous acceptance of TAC/ABET degrees under the 1986 Act.

¶ 18 Second, while Bourgeous vehemently argues that the only reason for the repeal of the 1992 Act and passage of the 1996 Act was to accept TAC/ABET degrees, he fails to support that conclusion. The legislature gave the Department discretion to determine acceptable education requirements, and "an agency's interpretation of statutory provisions is entitled to deference when there is more than one permissible reading of the statute and no basis in the statutory language or the legislative history to prefer one interpretation over another." *See Morton Int'l Inc. v. Utah State Tax Comm'n*, 814 P.2d 581, 588 (Utah 1991). Therefore, we look to the plain language to determine whether Bourgeous's reading of the statute should be preferred over the Department's. *See Biddle v. Washington Terrace City*, 1999 UT 110, ¶ 14, 993 P.2d 875.

¶ 19 The plain language of the 1996 Act reflects the legislature's concern over who makes decisions regarding licensing requirements rather than what those requirements should be. Under the 1996 Act, "Each applicant for licensure ... shall ... have graduated and received an earned bachelors or masters degree from an engineering program meeting criteria established by rule by the division in collaboration with the board." Utah Code Ann. § 58–22–302(1)(d)(i) (Supp. 2001). The legislature granted the Department broad discretion to determine the educational requirements and provided no guidance other than that the applicant must have a bachelors or masters degree. Hence, the

plain language of the 1996 Act establishes that the reason the legislature repealed the 1992 Act and adopted the 1996 Act was to change the government body that made licensing requirement decisions. In fact, the primary reason for the change was to allow the Department and the Professional Engineers and Professional Land Surveyors Licensing Board to determine whether the TAC/ABET degree was equivalent to the EAC/ABET degree. *See* Utah Code Ann. § 58–22–201 (1998) (describing board, its members, and duties). In other words, the legislature delegated these responsibilities to those with expertise in engineering qualifications. *See id.* Therefore, there is no basis in the plain language to suggest that Bourgeous's reading should be preferred over the Department's.

¶ 20 Bourgeous further argues that section 58–22–306 evidences that the legislature intended TAC/ABET and EAC/ABET degrees to be on equal footing for licensure. Under section 58–22–306, the legislature states that either a TAC/ABET degree or an EAC/ABET degree qualifies for the purpose of taking the FE exam. *See* Utah Code Ann. § 58–22–306 (1998). Therefore, Bourgeous argues, because TAC/ABET and EAC/ABET degrees are on equal footing for qualifying an applicant to take the FE exam, the legislature implicitly required the Department to consider both degrees equal for the purpose of licensure.

¶ 21 Again we examine the plain language of the statute. To help determine the meaning of the plain language, we assume that "the expression of one should be interpreted as the exclusion of another." *Biddle*, 1999 UT 110 at ¶ 14, 993 P.2d 875 (citation omitted). According to the plain statutory language, TAC/ABET and EAC/ABET degrees are on equal footing for the purpose of taking the FE exam only. If the legislature intended TAC/ABET degrees to be acceptable for licensure, it would have specifically so stated. Therefore, Bourgeous's argument regarding section 58–22–306 is unavailing. The 1996 Act does not allow TAC/ABET

degrees to qualify for licensure, but leaves that decision to the Department.[4]

## B. Arbitrary and Capricious

¶ 22 Bourgeous argues that the Department treated him arbitrarily and capriciously by treating him differently than other similarly situated applicants. If the Department treated Bourgeous differently than other similarly situated applicants, the Department's decision is arbitrary and capricious as a matter of law. *See Steiner Corp. v. Auditing Div.*, 1999 UT 53, ¶ 12, 979 P.2d 357 ("It is as arbitrary and capricious to apply the same law to the same facts and reach a different result as it is to apply a different rule in a factually similar situation."). Bourgeous argues he was treated differently than similarly situated applicants because: (1) John Hunter (Hunter) was granted a license after July 1, 1996 even though he had a TAC/ABET degree; and (2) the Department's rules governing licensure by endorsement of foreign applicants recognizes TAC/ABET degrees. We address each argument separately below.

### 1. John Hunter

¶ 23 Bourgeous claims that the Department acted arbitrarily and capriciously by not granting Bourgeous a license because the Department granted John Hunter a license, even though Hunter had a TAC/ABET degree and applied for licensure after the July 1, 1996 deadline. Hunter took the PE exam before July 1, 1996, but received a failing score. After his exam was rescored, he passed. The Department gave Hunter his license on the theory that the passing grade related back to the date of his "initial application." However, Hunter never made an "initial application" and did not apply until January 1997. The Department concedes that it may have erred in its reasoning for granting Hunter a license, but argues that

the outcome was still correct because Hunter finished his PE exam and his work experience before the July 1, 1996 deadline, even though he did not apply until January 1997. Essentially, the Department made an exception for Hunter because it was their mistake in scoring the PE exam that prevented Hunter from timely filing his application.[5]

¶ 24 Bourgeous argues that because Hunter's correct test score and application related back to qualify his application as timely, the Department should have granted Bourgeous a license based upon his initial application in 1989 when he obtained the Certificate. However, the 1986 Act clearly states that an applicant must obtain the Certificate and complete other requirements *before applying* for licensure. *See* Utah Code Ann. § 58–22–5(3) (1986). Thus, if an applicant must obtain the Certificate before applying for licensure, the Certificate itself cannot be the equivalent of an application for a license.

¶ 25 The Department also claims that Hunter is different than Bourgeous because Hunter completed both the PE exam and work experience before July 1, 1996. Hunter completed all requirements before the deadline even though he did not turn in proof of completion until after July 1, 1996 as part of the application process. Bourgeous, however, had not completed his work experience nor had he taken and passed the PE exam prior to July 1, 1996. As a result, Bourgeous and Hunter were not similarly situated, and the Department was not obligated to accept Bourgeous's application. Furthermore, because the 1992 Act was not to take effect until 1996, Bourgeous had four years notice that he needed to complete the licensure process prior to July 1996, but did not do so.

### 2. Foreign Applicants for Licensure by Endorsement

¶ 26 Bourgeous finally argues the Department treated him arbitrarily and ca-

4. Because we hold that the Department did not misinterpret the 1996 Act, Bourgeous's argument that the Department exceeded its jurisdiction because it misinterpreted the 1996 Act also fails a fortiori.

5. Bourgeous asserts that the Department cannot claim that Hunter would have timely applied but for his misscored exam because it never made a

finding of fact to that effect on the record. However, because the Hunter record is not part of the record in this case, we cannot consider that argument. *See Reliable Furniture Co. v. Fidelity & Guar. Ins. Underwriters*, 14 Utah 2d 169, 380 P.2d 135, 135 (1963) ("[W]e cannot consider matters not in the record before the trial court.").

priciously because it granted licenses to foreign applicants even though those applicants have TAC/ABET degrees. Under Utah Code Ann. § 58–22–302(4)(d) (Supp.2001), foreign applicants must:

[S]ubmit satisfactory evidence of:

(i) current licensure in good standing in a jurisdiction recognized by rule by the division in collaboration with the board; and

(ii) have successfully passed any examination established by rule by the division in collaboration with the board; and

(iii) full-time employment as a licensed professional engineer … as a principal for at least five of the last seven years immediately preceding the date of the application.

Under this statute, if an applicant is licensed by another state, and has only a TAC/ABET degree, the Department will still consider the applicant for licensure if he meets the other requirements of the statute. Bourgeous argues he is substantially similar to the foreign applicants, and because foreign applicants with TAC/ABET degrees are awarded licenses, he should also be awarded a license.

¶ 27 Bourgeous's argument is unpersuasive because the foreign applicants with TAC/ABET degrees are substantially different than he. First, the foreign applicants must be licensed in good standing in another state. *See id.* Second, the foreign applicants must have been a principal professional engineer for five of the last seven years. *See id.* Therefore, because of these material differences, the Department did not act arbitrarily or capriciously in its treatment of Bourgeous.

### CONCLUSION

¶ 28 Bourgeous has no vested right to a professional engineers license based on the Certificate, and the legislature has the right to change licensing requirements at any time to protect the public health and welfare. Therefore, Bourgeous was subject to the licensure requirements of the 1996 Act. Also, the Department complied with the Utah Administrative Procedures Act because its interpretation of the 1996 Act is consistent with a plain reading of the statute. Finally, because Hunter and foreign applicants are not situated similarly to Bourgeous, the Department did not act arbitrarily or capriciously in denying Bourgeous a license.

¶ 29 Affirmed.

¶ 30 WE CONCUR: NORMAN H. JACKSON, Presiding Judge, GREGORY K. ORME, Judge.