# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2022-0602, <u>Cheers P.R. & C. Gaming Corporation & a. v. New Hampshire Lottery Commission & a.</u>, the court on November 3, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. <u>See Sup. Ct. R.</u> 20(2). The plaintiffs, Cheers P.R. & C. Gaming Corporation and Donato Dandreo, III, appeal an order of the Superior Court (<u>Attorri</u>, J.) granting the motion to dismiss filed by the defendants, New Hampshire Lottery Commission, New Hampshire Charitable Gaming (collectively, the State defendants), and Valerie King, the New Hampshire Lottery Commission's Director of Charitable Gaming. We affirm.

The following facts are drawn from the trial court order and the complaint. This case involves the operation of Cheers Poker Room and Casino (Cheers), a charitable gaming facility located in Salem. According to the complaint, the defendants received multiple false claims about the plaintiffs, at least some of which the defendants believed, without "substantiat[ing] them with any reasonable due diligence." Citing various violations, the defendants suspended the plaintiffs' facility license in June 2018 and shut Cheers down, and then suspended the plaintiffs' games of chance operator's license in July 2018. The facility license and the operator's license were subsequently restored, and Cheers was able to reopen on November 8, 2018. Nevertheless, the plaintiffs allege that the defendants' bad faith investigation and subsequent decisions damaged them in excess of $10,000,000.

The plaintiffs filed a complaint against the defendants on November 5, 2021, asserting the following claims: (1) violation of the Consumer Protection Act; (2) negligence; (3) abuse of process; (4) malicious prosecution; and (5) defamation. The defamation claim asserted that King made false statements to news organizations that damaged the plaintiffs' reputation. The defendants filed a motion to dismiss, to which the plaintiffs objected. Following a hearing, the trial court issued a lengthy narrative order granting the defendants' motion to dismiss after concluding that: (1) the plaintiffs' claims against the State defendants are barred by sovereign immunity; (2) King could not be held personally liable in connection with conduct that falls within the scope of her official role; and (3) even if King's statements to the media fell outside the scope of her official duties, she could not be held personally liable in defamation for those statements because the statements were truthful. The plaintiffs filed a

motion for reconsideration and clarification, which the trial court denied. This appeal followed.

In reviewing a motion to dismiss, our standard of review is whether the allegations in the plaintiffs' pleadings are reasonably susceptible of a construction that would permit recovery. Doe v. Attorney General, 175 N.H. 349, 352 (2022). We assume the plaintiffs' pleadings to be true and construe all reasonable inferences in the light most favorable to the plaintiffs. Id. We then engage in a threshold inquiry that tests the facts in the complaint against the applicable law, and if the allegations do not constitute a basis for legal relief, we must affirm the grant of the motion to dismiss. Id.

We consider, first, whether the trial court erred when it concluded that the plaintiffs' claims against the State defendants were barred by sovereign immunity. In considering this issue, the trial court noted that the State defendants, as state agencies, are immune from suit in New Hampshire courts unless there is an applicable statute waiving immunity. See XTL-NH, Inc. v. N.H. State Liquor Comm'n, 170 N.H. 653, 656 (2018). The plaintiffs do not challenge this conclusion, but argue that two statutes, RSA 541-B:1 and RSA 491:8, operate to waive sovereign immunity as to their claims.

RSA chapter 541-B waives sovereign immunity for tort claims against state agencies in certain circumstances. Petition of N.H. Div. for Children, Youth & Families, 175 N.H. 596, 598 (2023). RSA 541-B:1 provides, in relevant part:

"Claim" means any request for monetary relief for either:

(a) Bodily injury, personal injury, death or property damages caused by the failure of the state or state . . . officials . . . to follow the appropriate standard of care . . .; or

(b) Property damages suffered by a state employee or official during the performance of that employee's or official's duties while on state business where compensation is appropriate under principles of equity and good conscience.

RSA 541-B:1, II-a (2021) (emphasis added). The plaintiffs argue that the trial court erred in concluding that the plaintiffs did not suffer "property damage" within the meaning of the statute when the State defendants suspended their gaming license. The trial court rejected this argument, noting both that the plaintiffs had failed to cite any case law in support of their claim that the suspension or revocation of an operating license constitutes "property damages" within the meaning of the statute, and that there is authority from other jurisdictions to support the proposition that the statute does not waive sovereign immunity in these circumstances. The trial court therefore

2

concluded that the plaintiffs' claims are not authorized by RSA 541-B:1, II-a. Based upon our review of the trial court's well-reasoned order, the plaintiffs' challenges to it, and the relevant law, we conclude that the plaintiffs have not demonstrated reversible error. See Gallo v. Traina, 166 N.H. 737, 740 (2014). The plaintiffs' argument that RSA 541-B:1, II-a should be read to not require damage to "tangible" property is misplaced because the issue is not whether a license is tangible or intangible property, but whether the suspension or revocation of a license constitutes "property damage." Furthermore, the fact that language in another state's statute may provide an exception to sovereign immunity does not have any bearing on whether the statute at issue here authorizes the plaintiffs' claims, and the fact that our interpretation might be "detrimental to the state's gaming industry" is likewise not relevant to our analysis.

The plaintiffs also argue that RSA 491:8 operates to waive sovereign immunity as to their claims. RSA 491:8 provides a statutory waiver of sovereign immunity for contract actions against the State. See Avery v. Comm'r, N.H. Dep't. of Corr., 173 N.H. 726, 731 (2020). The statute provides, in relevant part, that "[t]he superior court shall have jurisdiction to enter judgment against the state of New Hampshire founded upon any express or implied contract with the state." RSA 491:8 (Supp. 2022). The plaintiffs argue in their brief in conclusory fashion that "[a] valid contract requires mutual [assent], an acceptance of an offer, adequate consideration, and all are present in this case as both parties directly benefited from the agreement and signed the necessary documents to enter into it." We find this argument unpersuasive, and agree with the trial court's conclusion that no contract existed between the parties. As we stated over 150 years ago, "[i]n both the legal and popular sense, the term license implies no . . . binding contract between parties." State v. Holmes, 38 N.H. 225, 227 (1859). The view expressed in Holmes is the view held by a majority of jurisdictions under a variety of circumstances. See WMS Gaming, Inc. v. Sullivan, 6 A.3d 1104, 1111 (R.I. 2010) ("A license to engage in a business, occupation or activity otherwise prohibited by law . . . is a mere privilege or permission and in no sense a contract or property." (quotations and brackets omitted)); Concerned Citizens v. Dept. of Env. Cont., 505 N.W.2d 654, 659 (Neb. 1993) ("A license is not a contract or obligation between the authority, federal, state, or municipal, granting it and the person to whom it is granted."); Bourgeous v. State Department of Commerce, 41 P.3d 461, 465 (Utah Ct. App. 2002) (noting that "a license is not a contract").

To the extent that the plaintiffs assert that the requirement that they pay the State defendants 10% of their monthly after-prize revenue provides reason to depart from the rule that a license is not a contract, we are unpersuaded. Gallo, 166 N.H. at 740. Accordingly, RSA 491:8 does not abrogate the State's immunity in this case.

Having concluded that the trial court did not err in dismissing the claims against the State defendants, we now consider whether the trial court erred when it dismissed the claims brought against King. The plaintiffs do not dispute on appeal the trial court's conclusion that King could not be held personally liable in connection with conduct that falls within the scope of her official role. Therefore, at issue is whether the trial court erred in dismissing the defamation claim brought against King for statements she made to the media. We therefore consider the facts in the complaint in light of the applicable law to determine whether the allegations constitute a basis for legal relief. Doe, 175 N.H. at 352.

As the trial court noted, the plaintiffs' complaint only generally describes King's allegedly defamatory statements, but, in their response to the defendants' motion to dismiss, the plaintiffs identified two specific statements that were made to the media. The trial court concluded that because the statements were truthful, they were not actionable. We consider only the plaintiffs' challenge to the trial court's conclusion with respect to the statement King made to the Eagle Tribune because only that challenge is adequately briefed. See Appeal of Town of Nottingham, 153 N.H. 539, 555 (2006) (stating that argument not adequately briefed is considered waived).

To survive a motion to dismiss a defamation claim, the plaintiffs must have alleged facts that would show that the defendant failed to exercise reasonable care in publishing a false and defamatory statement of fact about them to a third party. Gascard v. Hall, 175 N.H. 462, 465 (2022). "In the law of defamation, truth is defined as substantial truth, as it is not necessary that every detail be accurate." Id. (quotation omitted).

According to the plaintiffs, King told the Eagle Tribune that "a failure to complete the required background and criminal records check and provide correct and up-to-date information to the New Hampshire attorney general's office was what caused the closure [of] the business." According to the complaint, the defendants suspended or revoked the plaintiffs' facility license because the facility license renewal application had been signed by Dandreo, a leaseholder, rather than the owner of the facility. Because the facility owner did not sign the application within ten days of when it was required to do so, the facility was closed. The trial court determined that the plaintiffs conceded in their pleadings that the facility owner refused to participate in the background check, a determination the plaintiffs do not challenge on appeal, and concluded that the statement was true. Based upon our review of the trial court's well-reasoned order, the plaintiffs' challenges to it, and the relevant law, we conclude that the plaintiffs have not demonstrated reversible error. See Gallo, 166 N.H. at 740.

Regarding the plaintiffs' request for clarification on whether Primex, which the plaintiffs allege provides insurance coverage to the New Hampshire

Lottery Commission, must comply with RSA 498:2-a, we affirm the trial court's ruling that the arguments concerning Primex were not properly before the court.  See Gallo, 166 N.H. at 740 (stating that the appealing party has the burden of demonstrating reversible error).

Affirmed.

MACDONALD, C.J., and HICKS and HANTZ MARCONI, JJ., concurred.


**Timothy A. Gudas,
Clerk**