THOMAS, Justice.
The respondent, Orene F. Rudasill, is the widow of Homer Dewey Rudasill who at the time of his death was employed as a painter hy a contracting painter known as James C. Davis.
The petitioner, Allison Developments, Inc., was engaged in developing a new subdivision. Davis, the contracting painter, was painting houses in the subdivision by agreement with the petitioner who was buying lots in the subdivision from the owner, Orlandia Corporation, as we will presently illustrate.
On 8 June 1961 Rudasill was killed in an automobile accident while on a mission to secure an additional supply of paint.
The claim of respondent seems to have gotten into much of a tangle. The respondent sent a letter to the Florida Industrial Commission 18 October 1961 presenting her claim and received a reply advising her that on the date of the unfortunate accident Davis, her husband’s employer, was self-insured through Corporate Group Service. It seems that at this time Davis’ whereabouts were unknown. At least he could not be reached by mail. The respondent next, through her Georgia attorneys, got in touch with Corporate Group Service only to be advised by that organization that coverage given by it to Davis had been cancelled before the accident occurred. According to petitioner’s brief the records of Florida Industrial Commission show that although Davis had been insured through Corporate Group Service, notice of cancellation of the coverage had been given 11 April 1961 to be effective 12 May 1961 and had been received by the Florida Industrial Commission 18 April 1961. The statements in this respect were, of course, not disputed by respondent. Hence at the time of the accident Davis was neither insured nor an authorized self-insurer.
On IS November 1961 attorneys for respondent wrote to Allison Developments, Inc., advising that organization of the snarled state of her claim and putting it upon notice that she proposed to undertake to hold it liable for compensation benefits to her since her husband’s employer Davis had been uninsured.
Meanwhile the procedure for dealing with the claim became complex. A claim had been filed on behalf of the widow against the contractor Davis as well as Corporate Group Service and a hearing date had been set for September 1962. This was postponed and an amended presentation was made claiming alternatively that Allison Developments, Inc., should pay benefits on the theory that that corporation was the contractor and Davis was the subcontractor, therefore, Allison was responsible.
Enter Mr. Joseph A. Scarlett, one-time deputy commissioner, who conducted hearings 2 October 1962 and 18 March 1963 but who made no order determining the controversy before resigning his position. Reenter Mr. Scarlett by virtue of an order of the Florida Industrial Commission dated 27 October 1964 appointing him deputy commissioner pro hac vice to conclude orders in this and other cases heard by him but not finished before his departure from the deputy commissionership to practice law privately. Prior to this time, however, attorneys then and now representing Allison Developments, Inc., and its insurance carrier, Auto Owners Insurance Company, applied for hearing on the claim and, reciting Mr. Scarlett’s history in connection with the case, moved that the Commission transfer authority and jurisdiction over the matter to the deputy commissioner in Orange County, Mr. Curtis B. Goff.
Counsel for petitioners tell us that “although venue of the claim was in Orange County” the acting director of Florida Industrial Commission wrote Mr. Leon F. Stewart, deputy commissioner in DeLand, *754 Florida, enclosing a copy of the application for hearing, whereupon the attorneys arranged with the reporter who had recorded the previous hearings to transcribe them and make them available to “Mr. Stewart or any other Deputy Commissioner.”
The record is silent as to anything done in the case by either Mr. Stewart or Mr. Goff. Then on 12 February 1965 attorneys for petitioners filed a motion to strike a certain affidavit anent attorney’s fees, and to disqualify Mr. Scarlett because he was actively and currently engaged in Workmen’s Compensation cases. Furthermore, it was insisted that since Mr. Scarlett had filed the transcript of testimony taken before him on two occasions, it was unnecessary for him further to consider the claim.
No action was taken on this motion. On 19 July 1966 more than three years after the last hearing and, we may add, five years after the death of respondent’s husband, Mr. Scarlett, as deputy commissioner pro hac vice, entered the order now appealed.
It is a sad commentary that the application of a law designed to afford speedy and simple relief to working people and their dependents should be so long delayed by legal skirmishes and maneuvers and lackadaisical administration. To illustrate the change wrought by the passage of time, the daughter of the claimant was 10i/¿ years old when her father was killed and in four months will be 17 years of age.
One wonders what the widow of the workman in this case and her young daughter were doing for sustenance while the sparring and delays were consuming days, weeks, months and years.
The salient, crucial facts stand out starkly. Rudasill was killed in the course of his employment. His immediate employer Davis did not have insurance though required to carry it, if he was to receive the benefits of the Workmen’s Compensation Law.
The operation of Allison Developments, Inc., in the development of the subdivision follows: A prospective purchaser would select a lot and the type of house he wished constructed. Allison would obtain a construction loan and cause the house to be built by subcontractors. The house and lot would be conveyed in exchange for a note and long-term mortgage from the proceeds of which the owner of the fee would be paid for the lot and the construction loan would be discharged as well as the costs of the transfer. The remainder constituted the profit to Allison.
The deputy held that Allison was a contractor within the terms of Sec. 440.10 and when its subcontractor James C. Davis failed to carry Workmen’s Compensation insurance or qualify as a self-insurer it became liable for compensation benefits to Rudasill, its subcontractor’s employee. We repeat that Rudasill was killed while driving toward a paint store where he purposed to replenish the supply of paint needed in Allison’s operation.
The deputy ordered the widow to be paid weekly benefits in the amount of $29.40 from 8 June 1961 for 350 weeks together with $12.50 to the minor child for 350 weeks. Payments to the widow would cease upon her death or remarriage and payments to the minor would cease upon her death, marriage or attainment of the age of 18. The widow was ordered reimbursed for funeral expenses in the sum of $500.00.
Only feature of the claim not finally determined was the amount to be allowed for attorney’s fees which the deputy thought should be fixed on further hearing.
The Full Commission affirmed the deputy’s order without comment. Despite the technical sparring, we think any irregularity in the proceedings was harmless and that the cause was justly decided. We join them in their approval.
It is, therefore, our judgment that the order of the deputy commissioner be affirmed, provided, however, that the matter be further considered with reference to at *755 torney’s fees and that the employer Allison Developments, Inc., submit its affidavit with reference to such fees to the deputy on or before 16 October 1967 and that the deputy enter his supplemental order based on the evidence already filed by respondents and on such evidence as the petitioners may file, not later than 30 October 1967.
CALDWELL, C. J., and ROBERTS, THORNAL and BARNS (Retired), JJ., concur.