849 So.2d 326 (2003)
Luis "Flavio" CUERO, Appellant,
v.
The RYLAND GROUP, INC. d/b/a Ryland Homes; Ryland Homes of Florida Realty Corporation; Sunfish Framing & Construction, Inc., Carlos Maldonado and Diego Gallego, Appellees.
No. 2D01-4138.
District Court of Appeal of Florida, Second District.
March 12, 2003.
Rehearing Denied April 30, 2003.
George A. Vaka of Vaka, Larson & Johnson, P.L., Tampa and Mark H. Perenich of Perenich, Carroll, Perenich, Avril & Caulfield, P.A., Clearwater, co-counsel for Appellant.
Valeria Hendricks, Cody Fowler Davis, and Steve Parker of Davis & Harmon, P.A., Tampa, for Appellees, The Ryland Group d/b/a Ryland Homes and Ryland Homes of Florida Realty Corp.
Robert J. Grace, Jr., of Stiles, Taylor & Grace, P.A., Tampa, for Appellee, Sunfish Framing & Construction, Inc.
*327 FULMER, Judge.
In this appeal, we are asked to determine whether the owner/developer of the Bayshore Townhomes project, The Ryland Group, Inc. (Ryland),[1] is entitled to immunity from tort liability in an action filed by an injured employee of one of the subcontractors working on the project. We conclude that Ryland is not the injured worker's statutory employer under section 440.10(1)(b), Florida Statutes (1999), and therefore, is not entitled to the immunity provided by section 440.11. Because the trial court reached a contrary conclusion, we reverse the final summary judgment entered in this case.
Bayshore Townhomes is a ten building, sixty-eight unit townhome complex. Ryland was both the owner/developer of the complex and the general contractor. Ryland entered into a contract with Sunfish Framing and Construction, Inc. (Sunfish), to do framing work on the project. Under this contract, Sunfish was required to maintain workers' compensation coverage for its employees. Sunfish subcontracted a portion of its work to Carlos Maldonado who in turn contracted with Diego Gallego to complete the application of the plywood sheathing on the roof. Gallego hired Luis Cuero to assist him.
On January 26, 2000, Cuero suffered personal injuries and resulting quadriplegia when he fell from the roof of building one and landed on the ground between units ten and eleven of that building. The day after the accident, Cuero's relatives went to the job site and inquired about the availability of benefits for Cuero's injuries. They were advised to speak to Ron Fish, the owner of Sunfish. Neither Gallego nor Maldonado had any type of worker's compensation insurance, and Sunfish had insurance for listed employees only, which did not include Cuero.
On March 20, 2000, Cuero initiated the underlying negligence action against Ryland, Sunfish, Carlos Maldonado, and Diego Gallego. In October 2000, Ryland submitted a notice of accident to its workers' compensation carrier, which accepted the accident as compensable and began making workers' compensation payments to Cuero. Cuero filed a second-amended complaint on January 5, 2001. Ryland and Sunfish both answered, raising as an affirmative defense their immunity from tort liability under section 440.11.[2] Cuero denied the affirmative defense and maintained that he was not a statutory employee of the defendants, that the defendants had failed to secure or provide worker's compensation benefits, or that the defendants were estopped or had waived the assertion of the defense.
Cuero, Ryland, and Sunfish each moved for summary judgment on the worker's compensation immunity and waiver and estoppel issues. The trial court concluded *328 that Ryland was a contractor and statutory employer entitled to the protection afforded by section 440.11 and that since Ryland had secured worker's compensation insurance and made it available to Cuero, Sunfish, too, was protected from tort liability.[3] The trial court rejected Cuero's waiver and estoppel arguments.[4]
It is the obligation to secure workers' compensation that gives the employer immunity from suit as a third-party tortfeasor. Jones v. Fla. Power Corp., 72 So.2d 285, 287 (Fla.1954). This immunity from suit is commensurate with the duty to secure compensation. Id. Pursuant to the provisions of section 440.10(1)(a),[5] Ryland had a statutory obligation to secure workers' compensation for its own employees. However, Ryland had a statutory liability to secure workers' compensation for Gallego's employee, Cuero, only if Ryland was a "contractor" as that term is used in section 440.10(1)(b), which provides:
In case a contractor sublets any part or parts of his or her contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment; and the contractor shall be liable for, and shall secure, the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.
Addressing the definition of a "contractor" within the meaning of this section, the Jones court stated:
[T]he clear implication in this part of the Act is that there must be a contractual obligation on the part of the contractor, a portion of which he sublets to another. To "sublet" means to "underlet", Webster's New International Dictionary; in the context in which it is used here, the effect of subletting is to pass on to another an obligation under a contract for which the person so "subletting" is primarily obligated.
72 So.2d at 289. In Jones, the court concluded that Florida Power was not operating under a primary obligation under a contract which it was passing on to another, and as such, was not a contractor within the meaning of the act. Thus, the question that must be examined is whether Ryland was subletting to Sunfish a portion of a primary obligation it had assumed under a contract with a third party. Because one does not become a contractor under section 440.10 merely by entering into a contract with a subcontractor, we must examine the nature of the contractual undertakings by Ryland and its subcontractor to determine whether a true contractor and subcontractor relationship exists under section 440.10(1)(b).
*329 All parties rely on the existence and content of the townhome purchase agreements for units ten and eleven to support their respective arguments.[6] Ryland argues that it had a primary obligation to construct the townhomes under these agreements, a portion of which it sublet to Sunfish. Cuero argues that the agreements are real estate sales agreements, not construction contracts, and that Ryland's primary obligation to construct the townhomes arose from Ryland's status as the owner/developer of the project and not from the agreements with potential purchasers of the townhome units.
The following undisputed facts compel our conclusion that Ryland had no primary obligation under a contract that it was passing on to Sunfish or any other subcontractor. Ryland was the fee owner of the property upon which it was developing the Bayshore Townhomes to sell for profit. The building permit for the townhomes lists Ryland as both the general contractor and the owner of the building from which Cuero fell. The townhomes were marketed by a Ryland employee acting as a seller's agent. Generally, the decision to construct a building was made prior to the time the sales agents were given authorization to start selling the units. Under the purchase agreement, title to the property did not pass from Ryland to the purchaser until delivery of the deed, which occurred after the building was complete and a certificate of occupancy had been issued for the unit. The buildings would have been constructed even if all of the units had not been sold.
These facts reveal that Ryland was constructing the townhomes as a commercial business venture for itself and not as a result of individual contractual obligations to third parties. As noted, the decision to construct a building was not dependent upon sales agreements having been executed for the individual units. Furthermore, if the sales agreement for an individual unit failed for some reason, such as denial of the buyer's mortgage application, the unit would still be constructed for speculative sale. More important, prior to closing, Ryland retained full ownership of and assumed all risk of loss or damage to the property.
These facts make clear that Ryland's primary obligation to construct the townhomes in the Bayshore Townhome project did not derive from the sales agreements ultimately executed with individual prospective purchasers. Ryland undertook to develop its own property acting as its own general contractor. It entered into subcontracts to build all the buildings and units, whether presold or not. It did not enter into subcontracts on a unit-by-unit basis for the purpose of passing on a construction obligation with a potential purchaser for a particular unit. Thus, the only privity of contract or obligation of Sunfish to perform work on the Bayshore *330 Townhomes project was with Ryland, the owner of the project. Furthermore, the sales agreements upon which Ryland relies are not construction contracts nor do they give rise to the contractor relationship required by section 440.10(1)(b). To construe them as such would result in the illogical and untenable conclusion that Ryland was the statutory employer of persons working on units for which a sales agreement had been executed but was not the statutory employer of persons working on the remaining units. Under this view, Ryland's status as a contractor and statutory employer would have to be examined on a unit-by-unit basis. And, Ryland's status would be subject to change during the course of construction on an individual unit from day to day or hour to hour as agreements were executed or defaulted.
Our conclusion that Ryland and, in turn, Sunfish are not entitled to immunity is consistent with cases construing the provisions of sections 440.10 and 440.11. See Allison Devs., Inc. v. Rudasill, 202 So.2d 752 (Fla.1967); Miami-Dade County v. Acosta, 757 So.2d 539 (Fla. 3d DCA 2000); Cadillac Fairview of Fla., Inc. v. Cespedes, 468 So.2d 417 (Fla. 3d DCA 1985); S. Seas Plantation, Ltd. v. Acevedo, 387 So.2d 1035 (Fla. 1st DCA 1980).
For the reasons stated, it was error for the trial court to enter summary judgment in favor of Ryland and Sunfish. Accordingly, the final summary judgment is reversed and the cause remanded for further proceedings consistent with this opinion.
NORTHCUTT and CASANUEVA, JJ., Concur.
NOTES
[1] Of the several defendants in the underlying litigation, The Ryland Group, Inc., and Sunfish Framing and Construction, Inc., are the only participants in this appeal.
[2] Section 440.11(1) provides in pertinent part:

The liability of an employer prescribed in s. 440.10 shall be exclusive and in place of all other liability of such employer to any third-party tortfeasor and to the employee, the legal representative thereof, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or the legal representative thereof in case death results from the injury, may elect to claim compensation under this chapter or to maintain an action at law or in admiralty for damages on account of such injury or death.
[3] Cuero conceded that if Ryland was entitled to immunity, Sunfish would likewise be entitled to immunity.
[4] Because we are reversing the trial court's immunity determination, we do not address the waiver and estoppel issues.
[5] Section 440.10(1)(a) provides:

Every employer coming within the provisions of this chapter, including any brought within the chapter by waiver of exclusion or of exemption, shall be liable for, and shall secure, the payment to his or her employees, or any physician, surgeon, or pharmacist providing services under the provisions of s. 440.13, of the compensation payable under ss. 440.13, 440.15, and 440.16. Any contractor or subcontractor who engages in any public or private construction in this state shall secure and maintain compensation for his or her employees under this chapter as provided in s. 440.38.
[6] In June and September 1999, Ryland entered into purchase agreements for units ten and eleven in building one. The agreements provided in part:

PURCHASE: You agree to purchase and We agree to sell the [home site and the home that we will construct] for the Purchase Price as determined and revised by the Customer Selection Sheet and any Amendments.
CONSTRUCTION OF HOME: We will begin construction within a reasonable time after all land development work is complete on the Property and We have (a) all necessary governmental and private approvals, (b) all payments due to Us prior to start of construction and (c) proof, satisfactory to Us, of your ability to pay the balance of the Purchase Price at Settlement.
TITLE TO PROPERTY: Neither legal nor equitable title shall pass until delivery of the deed.