927 So.2d 914 (2006)
Jeffrey GALLAGHER, Appellant/Cross-Appellee,
v.
MANATEE COUNTY, Appellee/Cross-Appellant.
No. 2D04-3724.
District Court of Appeal of Florida, Second District.
February 1, 2006.
Rehearing Denied April 4, 2006.
*915 Kendra D. Presswood of Presswood Law Firm, P.A., Holmes Beach, for Appellant/Cross-Appellee.
Robert Michael Eschenfelder, Assistant County Attorney, Bradenton, for Appellee/Cross-Appellant.
Frederick W. Ford, West Palm Beach, for Amicus Curiae National Employment Lawyers Association, Florida Chapter.
Harry Morrison, Jr., Rebecca A. O'Hara, and Virginia Saunders Delegal, Tallahassee, for Amicus Curiae Florida League of Cities, Inc., and Florida Association of Counties, Inc.
CANADY, Judge.
Jeffrey Gallagher brought an action under the Florida Civil Rights Act of 1992 *916 (the Act) against his employer, Manatee County, for gender discrimination and retaliation. After a jury trial, a verdict was returned in favor of Gallagher, awarding him compensatory damages and back pay on both claims. On appeal, Gallagher challenges the trial court's application of the $100,000 statutory cap on the County's liability, as well as the calculation of fees and costs and the denial of certain equitable relief. In its cross-appeal, the County challenges the sufficiency of the evidence to support the verdict for Gallagher on the retaliation claim and on the award of back pay for both claims. We affirm on all issues raised by both parties and write only to discuss the issue raised by Gallagher with respect to application of the $100,000 cap on the County's liability.

I. The Issue of the $100,000 Cap

The trial court determined that Gallagher's attorneys' fees, his costs and expenses, the compensatory damages award, and the back pay award were collectively subject to the limitation on "[t]he total amount of recovery" provided for in section 760.11(5), Florida Statutes (2002), which by reference adopts the $100,000 cap in section 768.28(5), Florida Statutes (2002).[1]
Gallagher argues that the $100,000 cap applies only to compensatory damages and not to other monetary awards available under section 760.11(5). Gallagher contends the statutory provisions regarding the cap are ambiguous and should be interpreted liberally in favor of civil rights plaintiffs, as required by section 760.01(3). He also relies on legislative history in support of his argument that the $100,000 cap applies only to compensatory damages. Specifically, Gallagher cites a legislative staff analysis which states that the provision codified in section 768.28(5) "provides that . . . any recovery for compensatory damages shall be limited by the provisions of sovereign immunity."[2]
In response, the County argues that a waiver of sovereign immunity must be strictly construed and that the unambiguous language of the statute is inconsistent with Gallagher's claim regarding the $100,000 cap. The County also contends that consideration of legislative history is inappropriate where the language of the statute is clear.

II. The Statutory Framework

Section 760.11 sets forth the scheme of remedies available to persons who are aggrieved by a violation of the Act. Section 760.11(5) contains the following pertinent provisions concerning civil actions brought pursuant to the Act:
(5) In any civil action brought under this section, the court may issue an order prohibiting the discriminatory practice and providing affirmative relief from the effects of the practice, including back pay. The court may also award compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, and any other intangible injuries, and punitive damages.. . . The judgment for the total amount of punitive damages awarded under this section to an aggrieved person shall not exceed $100,000. In any action or proceeding under this subsection, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs. It is the intent of the Legislature that this *917 provision for attorney's fees be interpreted in a manner consistent with federal case law involving a Title VII action.. . . Notwithstanding the above, the state and its agencies and subdivisions shall not be liable for punitive damages. The total amount of recovery against the state and its agencies and subdivisions shall not exceed the limitation as set forth in s. 768.28(5).

(Emphasis added). The reference to section 768.28(5) is to the statutory provision which establishes limitations on the waiver of sovereign immunity for tort liability:
(5) The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages or interest for the period before judgment. Neither the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $100,000 or any claim or judgment, or portions thereof, which, when totaled with all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence, exceeds the sum of $200,000. However, a judgment or judgments may be claimed and rendered in excess of these amounts and may be settled and paid pursuant to this act up to $100,000 or $200,000, as the case may be; and that portion of the judgment that exceeds these amounts may be reported to the Legislature, but may be paid in part or in whole only by further act of the Legislature.
(Emphasis added).

III. The Meaning of "The Total Amount of Recovery"

Nothing in the text of the pertinent statutory provisions or in their context provides any support for Gallagher's argument. There is no basis for concluding, as Gallagher urges, that when the legislature referred in section 760.11(5) to "[t]he total amount of recovery" the legislature meant "only the compensatory damages awarded." The plain meaning of "total amount of recovery" cannot be reconciled with Gallagher's argument.
Recovery means "the obtaining of right to something by verdict or judgment of a court of law." Random House Unabridged Dictionary 1613 (2d ed.1993); see also Black's Law Dictionary 1302 (8th ed.2004) (defining recovery as "[a]n amount awarded in or collected from a judgment or decree"); cf. Webster's Third New International Dictionary 1898 (1993) (defining recover as "[t]o gain by legal process"). Recovery and its cognate recover are broad and comprehensive terms. There is nothing in the meaning of recovery which suggests that some elements of an award are not part of the recovery which is subject to the cap on liability. The legislature employed a phrase"the total amount of recovery"that is crystal clear in its inclusiveness.
The receipt of an award of back pay is commonly understood to be a recovery. See, e.g., Pa. State Police v. Suders, 542 U.S. 129, 147 n. 8, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004) (stating that the plaintiff in a constructive discharge gender discrimination case "may recover postresignation damages, including both backpay and, in fitting circumstances, frontpay" (emphasis added)); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 119, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (discussing statutory provision allowing for "recovery of backpay liability" in employment discrimination cases (emphasis added)).
Recover is commonly used with reference to the award of attorney's fees and costs. See, e.g., Ardestani v. Immigration & Naturalization Serv., 502 U.S. 129, 132, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991) *918 ("The [Equal Access to Justice Act] provides that prevailing parties ... may recover attorney's fees and costs from the Government." (emphasis added)); Atchison, T. & S.F.R. Co. v. Matthews, 174 U.S. 96, 108, 19 S.Ct. 609, 43 L.Ed. 909 (1899) (Harlan, J., dissenting) (discussing statute under which claimant was "entitled to recover the amount of such claims and all costs of suit[] and in addition thereto all reasonable attorney's fees" (emphasis added)).
The laws of Florida are replete with references by the Florida Legislature to the recovery of costs and attorney's fees. See, e.g., § 70.001(6)(c)(1), Fla. Stat. (2002) (providing under Bert J. Harris, Jr., Private Property Rights Protection Act that "the property owner is entitled to recover reasonable costs and attorney fees incurred by the property owner" (emphasis added)); § 400.629(1), Fla. Stat. (2002) (providing that "[a]ny plaintiff who prevails in any... action [under the Adult Family-Care Home Act] is entitled to recover reasonable attorney's fees, costs of the action, and damages" except in specified circumstances (emphasis added)); § 718.1255(4)(h), Fla. Stat. (2002) (providing with respect to disputes arising under the Condominium Act that "[t]he parties may seek to recover any costs and attorneys' fees incurred in connection with arbitration and mediation proceedings under this section as part of the costs and fees that may be recovered by the prevailing party in any subsequent litigation" (emphasis added)); § 766.111(3), Fla. Stat. (2002) ("Any person who prevails in a suit brought against a health care provider predicated upon a violation of this section [prohibiting engaging in unnecessary diagnostic testing] shall recover reasonable attorney's fees and costs." (emphasis added)); § 768.79(1) (providing for circumstances under which party offering or demanding judgment is "entitled to recover reasonable costs and attorney's fees" (emphasis added)). The legislature's recurrent use of recover demonstrates that the meaning of that term and the cognate term recovery cannot be limited in the way suggested by Gallagher.
Our understanding of the scope of the cap applicable under section 760.11(5) is consistent with the rule applied in interpreting the scope of the cap generally applicable to tort claims under section 768.28(5). Rejecting a claim that the statutory cap was not applicable to costs and postjudgment interest, the court in Berek v. Metropolitan Dade County, 396 So.2d 756, 759 (Fla. 3d DCA 1981), stated: "In a word, the Legislature has said $50,000 [the amount of the statutory liability cap then applicable], whatever the components may be, is the most the Legislature will permit a court to award a claimant." (Footnote omitted.) (Emphasis supplied.) See also Pinellas County v. Bettis, 659 So.2d 1365, 1367 (Fla. 2d DCA 1995). Section 760.11(5) specifically incorporates "the limitation" on liability "as set forth in s. 768.28(5)." There is no basis for concluding that the well-established scope of the limitation of liability under section 768.28(5)encompassing all components of a monetary judgmentshould not also obtain under section 760.11(5).
The meaning of "[t]he total amount of recovery" in section 760.11(5) is plain. It refers to all of the elements of the monetary award to a plaintiff against a sovereignly immune entity. This is the only plausible understanding of the statutory phrase. "[T]he statute is clear and unambiguous in its terms, and we are bound to enforce the plain meaning of the statute the legislature has created." W.G. v. State, 910 So.2d 330, 332 (Fla. 4th DCA 2005).
Gallagher's arguments based on the rule of liberal construction and legislative history run aground on the clarity of the statutory text.

*919 When a statute is clear, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent. Instead, the statute's plain and ordinary meaning must control, unless this leads to an unreasonable result or a result clearly contrary to legislative intent.
State v. Burris, 875 So.2d 408, 410 (Fla. 2004) (citations omitted).
The rule of liberal statutory construction in section 760.01(3)like other rules of constructioncomes into play only when there is some ambiguity in the statutory text.[3] The rule cannot be used to defeat the plain meaning of the statute. Instead, it guides the interpreter in making an interpretative choice when the text may reasonably be understood in more than one way. That circumstance does not present itself here.
Similarly, "[l]egislative history is not needed to determine intent when the language is clear." Mitchell v. State, 911 So.2d 1211, 1214 (Fla.2005). "Courts are not to change the plain meaning of a statute by turning to legislative history if the meaning of the statute can be discerned from the language in the statute." State v. Sousa, 903 So.2d 923, 928 (Fla.2005). "[T]he legislative history of a statute is irrelevant where the wording of a statute is clear." Id.
Finally, we note that the direction in section 760.11(5) that the "provision for attorney's fees be interpreted in a manner consistent with federal case law involving a Title VII action" has no application to the issue of whether attorney's fees are subject to the $100,000 cap on liability. Aside from a provision disallowing the award of punitive damages against the government, the federal law contains no specific limitation on recoveries against governmental entities. 42 U.S.C. § 1981a (2002). The federal case law thus can be of no help in interpreting the specific provision of section 760.11(5) limiting recoveries against sovereignly immune entities.

IV. Conclusion

We acknowledge that the denial of a full recovery of attorney's fees, costs, back pay, and compensatory damages limits the effectiveness of the remedy provided to a prevailing plaintiff in a civil rights case against an entity enjoying the benefit of sovereign immunity. But that is a matter of policy which is within the province of the legislature. The statute at issue here unequivocally reflects that in weighing the relevant policy issues the legislature gave priority to the policy of placing strict limitations on the waiver of sovereign immunity. We are bound by the legislature's decision on this issue of policy.
Affirmed.
FULMER, C.J., and WHATLEY, J., Concur.
NOTES
[1] The total amount of the award to Gallagher was $560,026.25, consisting of compensatory damages of $230,000, back pay of $20,000, attorneys' fees of $291,743.75, and costs and expenses of $18,282.50.
[2] Fla. H.R. Comm. on Jud., CS for SB 1368 and 72 (1992) Staff Analysis (final April 13, 1992) (on file with comm.).
[3] Section 760.01(3) provides: "The Florida Civil Rights Act of 1992 shall be construed according to the fair import of its terms and shall be liberally construed to further the general purposes stated in this section and the special purposes of the particular provision involved." (Emphasis added.) Section 760.01(2) sets forth the general purpose of the Act "to secure for all individuals within the state freedom from [invidious] discrimination." The statutory formulation itself recognizes that the construction of the statute must be "according to the fair import of its terms" and must take into account not only the general purpose of protecting against invidious discrimination but also the "special purposes" of the provision at issue. Here, of course, the special purpose of the provision at issue is to limit governmental liability.