NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ALICE SLORA,                          )
                                      )
            Appellant,                )
                                      )
v.                                    )        Case No. 2D14-2745
                                      )
SUN 'N FUN FLY-IN, INC.,              )
                                      )
            Appellee.                 )
_____)

Opinion filed August 26, 2015.

Appeal from the Circuit Court for
Polk County; Mark H. Hofstad, Judge.

Jeffrey E. Appel, Lakeland, for Appellant.

Katherine E. Giddings and Kristen M. Fiore
of Akerman LLP, Tallahassee, and Mitchel
E. Kallet of Kern Wooley PC, Palm Beach
Gardens, for Appellee.


SALARIO, Judge.

            Alice Slora appeals from a final summary judgment in favor of Sun 'n Fun

Fly-In, Inc., the defendant in Ms. Slora's negligence action.  Ms. Slora was employed by

U.S. Security Associates, Inc., which provided event security at an air show operated by

Sun 'n Fun and during which Ms. Slora was injured.  The circuit court held as a matter of

law that Sun 'n Fun was a statutory employer immune from liability under Florida's

Workers' Compensation Law because it was a "contractor" that sublet "contract work" to U.S. Security, which, in turn, provided workers' compensation benefits to Ms. Slora. See §§ 440.10(1)(b), .11(1), Fla. Stat. (2010). According to the circuit court, Sun 'n Fun was a "contractor" because the undisputed facts established a contractual relationship between Sun 'n Fun and the Federal Aviation Administration documented in certain certificates of waiver issued to Sun 'n Fun by the FAA, which authorized Sun 'n Fun to operate the air show subject to numerous conditions, including the condition that security be provided.

This conclusion rested on the determination, as a matter of law, that the certificates of waiver were contracts. We conclude that they were not contracts but rather were regulatory permits or licenses. For that reason, the undisputed facts do not support the legal conclusion that Sun 'n Fun was a contractor for the purposes of chapter 440. We reverse the final summary judgment and remand for further proceedings.

I.

A.

Sun 'n Fun operates air shows for the enjoyment of the general public. That subjects Sun 'n Fun's operations to the regulatory jurisdiction of the FAA. Title 49 of the United States Code delegates to the FAA the authority to prescribe and enforce regulations related to air safety. The FAA also has discretion to waive compliance with certain of those regulations upon an application for a certificate of waiver and subject to such conditions as it deems appropriate. The failure to comply with FAA safety

- 2 -

regulations or, if applicable, conditions imposed by a certificate of waiver is prohibited by federal law.

Sun 'n Fun planned to operate an air show at and around the Lakeland Linder Regional Airport on March 29 through April 3, 2011. Sun 'n Fun submitted applications to the FAA for certificates of waiver of certain regulations that would otherwise prohibit or restrict planned activities scheduled to occur at the show. For example, Sun 'n Fun sought waiver of regulations relating to the minimum altitudes at which flight is permitted, allowing flight over a congested area, and allowing aerobatic flight in certain airspace, in certain locations, and at certain altitudes.

The applications were on standard forms provided by the FAA for the purpose of requesting certificates of waiver. The forms were two pages long and called for basic information about the event and the waivers Sun 'n Fun was requesting. That information included the proposed operations, the area in which those operations would occur, the regulations as to which each waiver was sought, the emergency facilities available at the event location, and the provisions made for policing the event.

The FAA granted Sun 'n Fun the requested certificates of waiver. The certificates specified the operations the FAA was allowing Sun 'n Fun to undertake and the regulations it was waiving in that regard. In addition, the certificates contained a long list of "standard provisions" and "special provisions" with which the FAA required that Sun 'n Fun comply. These governed a range of matters related to the airshow, including the speed at which aircraft could fly, the briefing of air show participants, and the maintenance of communications capabilities. Stressing that the provisions were requirements of the FAA, each certificate stated that "[n]o person shall conduct any

operation pursuant to the authority of this certificate except in accordance with the standard and special provisions . . . and such other requirements of the Federal Aviation Regulations not specifically waived by this certificate." Each certificate also stated that "[f]ailure to comply with any standard or special provision is a violation of the terms of this Certificate . . . and justification for cancellation of this Certificate and constitutes a violation of Title 49 of the United States Code (49 U.S.C.) section 44711(a)(5)."

Certain of the certificates contained provisions related to security and policing, including requirements for "safeguarding persons and property on the surface" and ensuring that "adequate policing shall be provided to confine spectators to designated areas." To comply, Sun 'n Fun contracted with U.S. Security to provide security at the air show. Ms. Slora was a guard employed by U.S. Security and assigned by it to work the Sun 'n Fun air show.

On March 31, 2011, while the air show was ongoing, a severe storm struck in Polk County. Ms. Slora was working inside a security guard shack at the airport. A tornado struck, lifted the shack off the ground, overturned it, and deposited it into a nearby ditch. Ms. Slora, who was still inside, was injured. To compensate for her injuries, Ms. Slora made a claim for workers' compensation benefits provided by U.S. Security, which claim was settled.

B.

On August 27, 2013, Ms. Slora filed a complaint against Sun 'n Fun in the circuit court. She alleged that bad weather and tornadoes in Polk County were foreseeable to Sun 'n Fun, which failed to maintain the guard shack in a reasonably safe condition and to warn invitees of the risks of injury from foul weather. She asserted a

- 4 -

single claim for negligence seeking damages and other relief.  Sun 'n Fun filed an answer, which included an affirmative defense that Sun 'n Fun was immune from liability in tort under Florida's Workers' Compensation Law.

On November 20, 2013, Sun 'n Fun filed a motion for summary judgment based on its affirmative defense of workers' compensation immunity.  It argued that Ms. Slora's claim to the workers' compensation benefits provided by U.S. Security were the exclusive remedy for her injuries because, although Sun 'n Fun was not Ms. Slora's direct employer, section 440.10(1)(b) extends immunity to a "contractor [that] sublets any part or parts of [its] contract work to a subcontractor or subcontractors."  Sun 'n Fun's theory was that, under the undisputed facts, section 440.10(1)(b) entitled it to immunity because the certificates of waiver issued by the FAA constituted a contract that imposed an obligation to provide security at the air show, which it subcontracted to U.S. Security.  Ms. Slora responded, raising no dispute of fact but arguing that the certificates of waiver were not contracts and thus could not serve as the basis for concluding Sun 'n Fun was a contractor.  The circuit court found that a contractual relationship existed between the FAA and Sun 'n Fun and granted summary judgment in favor of Sun 'n Fun because there were no material facts in dispute and the contractual relationship entitled Sun 'n Fun to immunity as a matter of law.  Final judgment was entered, and this appeal timely followed.

II.

We review the circuit court's grant of summary judgment de novo.  Green v. APAC-Fla., Inc., 935 So. 2d 1231, 1233 (Fla. 2d DCA 2006).  The question before us is whether the record establishes to the exclusion of any genuine issue of material fact

- 5 -

that Sun 'n Fun's relationship with the FAA rendered it a "contractor" immune from liability under Florida's Workers' Compensation Law.[1] See Derogatis v. Fawcett Mem'l Hosp., 892 So. 2d 1079, 1083-84 (Fla. 2d DCA 2004) (reversing summary judgment in favor of a defendant claiming workers' compensation immunity where no facts were present on the record to show that a contract existed). Because Sun 'n Fun's argument that it was a "contractor" hinged on its assertion that the certificates of waiver issued to it by the FAA were contracts, Sun 'n Fun had to show that there was no factual or legal dispute that such contracts existed in order to be entitled to summary judgment. See Westchester Fire Ins. Co. v. In-Sink-Erator, 252 So. 2d 856, 858 (Fla. 4th DCA 1971) (explaining that "where a determination of liability depends on a written instrument of the parties thereto and the legal effect to be drawn therefrom, the question at issue is one of law only, and ordinarily is determinable by summary judgment," unless the terms of the instrument are ambiguous).

Under section 440.10, every employer is legally obligated to secure the payment of medical and disability benefits for any employee who is injured at work. § 440.10(1)(a). In exchange, the employer's liability for those benefits is made "exclusive and in place of all other liability . . . of such employer . . . to the employee." § 440.11(1). As a result, "employers who provide workers' compensation benefits . . . are

---

[1]The typical workers' compensation issue in this context is not whether a contractor/subcontractor relationship exists. Instead, the question is usually whether an injured worker was a statutory employee rather than a true independent contractor, thereby rendering the defendant a statutory employer. See § 440.02(15)(d)(1), Fla. Stat. (2010). This was not the issue before the trial court in this case.

immune from tort liability."[2]  Cent. Fla. Lumber Unlimited, Inc. v. Qaqish, 12 So. 3d 766, 769 (Fla. 2d DCA 2009).

The obligation to secure payment of workers' compensation benefits and concomitant immunity from tort liability extends not only to direct employers but also to certain "statutory employers."  Id.  In that connection, section 440.10(1)(b) provides:

> In case a contractor sublets any part or parts of his or her contract work to a subcontractor . . . , all of the employees of such contractor and subcontractor . . . engaged on such contract work shall be deemed to be employed in one and the same business or establishment, and the contractor shall be liable for, and shall secure, the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.

The purpose of this provision is to "insure [sic] that a particular industry will be financially responsible for injuries to those employees working in it, even though the prime contractor employs an independent contractor to perform" some or all of the work. Gator Freightways, Inc. v. Roberts, 550 So. 2d 1117, 1119 (Fla. 1989) (quoting Roberts v. Gator Freightways, Inc., 538 So. 2d 55, 60 (Fla. 1st DCA 1989)).

The statutory terms "contractor" and "contract work" plainly and unambiguously posit a party performing work pursuant to a contract with another. Thus, to be immune from tort liability as a contractor, a defendant's "primary obligation in performing a job or providing a service must arise out of a contract."  Derogatis, 892 So. 2d at 1083 (quoting Sotomayor v. Huntington Broward Assocs., L.P., 697 So. 2d 1006,

---

[2]The legislature's objective was "to assure the quick and efficient delivery of disability and medical benefits to an injured worker and to facilitate the worker's return to gainful reemployment at a reasonable cost to the employer."  § 440.015.  It determined that "a mutual renunciation of common-law rights and defenses by employers and employees" served that objective.  Id.

1007 (Fla. 4th DCA 1997)).  To be entitled to this immunity, Sun 'n Fun had to show that it "incurred a contractual obligation to a third party," the FAA, a part of which obligation Sun 'n Fun then "delegated or sublet to a subcontractor," U.S. Security, whose employee, Ms. Slora, was injured during the course of executing that obligation.  See id. (quoting Antinarelli v. Ocean Suite Hotel, 642 So. 2d 661, 662 (Fla. 1st DCA 1994)); see also Qaqish, 12 So. 3d at 769.  Sun 'n Fun argued its contractual obligation arose from the certificates of waiver granted by the FAA.  The summary judgment evidence it submitted in support of that claim was the applications for the certificates of waiver and the certificates of waiver themselves.

The problem for Sun 'n Fun is that the certificates of waiver look far more like regulatory permits or licenses than contracts.  Permits and licenses are issued by government agencies to allow the permit or license holder to engage in activity that would otherwise be prohibited or restricted by law or regulation.  See generally Outdoor Media of Pensacola, Inc. v. Santa Rosa Cty., 554 So. 2d. 613, 615 (Fla. 1st DCA 1989) (defining a license issued by a governmental entity as different from a contract entered with such entity).  Contracts, in contrast, are bargained-for agreements created through a manifestation of mutual assent, typically through offer and acceptance, supported by the exchange of consideration.  See generally Restatement (Second) of Contracts §§ 1, 17, 22 (Am. Law Inst. 1981).

The two relationships are distinct.  A permit or license facilitates the government's regulation of an activity in the public interest, while a contract facilitates an exchange of promises between two or more parties for some mutually beneficial purpose.  A license or permit does not have the elements of a contract.  A license or

permit is generally enforced through regulatory or criminal action; a contract is generally enforced through a suit for damages or specific performance.  In view of these and other differences, courts routinely hold that a license or permit is merely the grant by the government of a privilege to the holder of the license or permit and does not constitute a contract.  Outdoor Media, 554 So. 2d at 615 ("A license is not a contract between the state and the licensee, but is a mere personal permit." (quoting Black's Law Dictionary 829 (5th ed. 1979)); see also Lichterman v. Pickwick Pines Marina, Inc., No. 1:07CV256-SA-JAD, 2010 WL 1709980, at *2 (N.D. Miss. Apr. 23, 2010) (holding that permit issued pursuant to Section 26a of the Tennessee Valley Authority Act was not a contract); WMS Gaming, Inc. v. Sullivan, 6 A.3d 1104, 1111 (R.I. 2010) ("Therefore, '[a] license . . . is a mere privilege or permission and in no sense a contract or property.' " (alteration in original) (quoting Thayer Amusement Corp. v. Moulton, 7 A.2d 682, 686 (R.I. 1939))); Patzer v. City of Loveland, 80 P.3d 908, 912 (Colo. App. 2003) ("[A] typical building permit, such as the one here, does not create a contractual obligation between the city and the permittee."); Bourgeous v. Utah Dep't of Commerce, 41 P.3d 461, 465 (Utah Ct. App. 2002) ("It is axiomatic that a license does not create any vested rights in its holder because a license is not a contract."); US Ecology, Inc. v. State, 111 Cal. Rptr. 2d 689, 702 (Cal. Ct. App. 2001) ("A license merely permits an entity to pursue a regulated activity, and 'has none of the elements of a contract.' " (quoting Rosenblatt v. Cal. State Bd. of Pharmacy, 158 P.2d 199 (Cal. Ct. App. 1945))); Concerned Citizens of Kimball Cty., Inc. v. Dep't of Envtl. Control, 505 N.W.2d 654, 659 (Neb. 1993) ("A license is not a contract or obligation between the authority, federal, state, or municipal,

granting it and the person to whom it is granted." (quoting 53 C.J.S. Licenses § 3 at 322 (1987))).

Here, the undisputed facts available at the summary judgment hearing show that the certificates of waiver issued by the FAA were in the nature of licenses or permits. The FAA exercises the authority of the federal government for purposes of regulating air traffic and ensuring air safety. Sun 'n Fun wanted to conduct air show activities that would have been illegal and would have subjected it to sanction unless the FAA waived certain regulations. It requested that waiver by submitting short applications providing basic information about what it intended to do. The FAA responded by issuing Sun 'n Fun written certificates specifying the limited regulations with which it would deem compliance excused, thereby saving Sun 'n Fun from violating federal law, and identifying numerous conditions with which Sun 'n Fun was required to comply to engage in the regulated activity. This summary judgment evidence thus shows that the FAA certificates of waiver were licenses or permits in the classic sense of those terms—namely, dispensations from a government body to conduct activities that would be prohibited in the absence of such dispensation.[3] See, e.g., Outdoor Media, 554 So. 2d at 615 (defining license as "[a] permit, granted by an appropriate

---

[3]This conclusion finds additional support in the principle that the mere fact that a party is under a purely legal obligation arising outside of a contract—such as one imposed by a statute or the common law—does not render one a "contractor" entitled to immunity. See, e.g., Smith v. Mariner's Bay Condo. Ass'n, 789 So. 2d 1228, 1230 (Fla. 3d DCA 2001) (holding that an obligation imposed by statute "cannot form the basis for a statutory employer relationship"); Sotomayor, 697 So. 2d at 1008 (A "common law duty alone would not be sufficient to grant workers' compensation immunity to defendant."). The duties imposed by the certificates of waiver in this case are duties imposed by law, i.e., regulatory mandate, rather than any form of contractual duty arising from a bargained-for exchange.

governmental body, generally for a consideration, to a person, firm, or corporation to pursue some occupation or to carry on some business subject to regulation under the police power" (alteration in the original) (quoting Black's Law Dictionary 829 (5th ed. 1979))).

Nor did Sun 'n Fun present any summary judgment evidence to show that the certificates of waiver were something other than what their unambiguous terms demonstrate. Sun 'n Fun described them as contracts to provide an air show or as contracts to conduct its air show in accord with the condition that security be provided. Yet the record is devoid of any undisputed facts to suggest that this is so.[4]

By way of example, the applications submitted by Sun 'n Fun to the FAA are on their faces requests that the FAA refrain from the enforcement of certain regulations so that Sun 'n Fun could legally pursue activities for its own benefit. Such requests are not offers on definite terms to enter into a bargain with the FAA. See Lee Cty. v. Pierpont, 693 So. 2d 994, 996 (Fla. 2d DCA 1997) (noting that an offer is "[a] manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it"). Similarly, the certificates of waiver, which contain numerous conditions discussed nowhere in the applications and as to which the record contains no evidence of agreement by Sun 'n Fun, mandate that Sun 'n Fun comply or forebear from operating an air show on pain of federal sanction. This is a regulatory mandate, and Sun 'n Fun failed to show any of the waivers represented an acceptance or a mutual agreement

_____

[4]In its order granting summary judgment, the circuit court characterized the certificates of waiver as contracts, but it did not explain what evidence, if any, supported that assertion.

- 11 -

between the FAA and Sun 'n Fun on terms of exchange.  See Giovo v. McDonald, 791 So. 2d 38, 40 (Fla. 2d DCA 2001) (explaining that "an acceptance is effective to create a contract only if it is absolute and unconditional, and identical with the terms of the offer" and that a contract is formed only where there is "mutual or reciprocal assent to certain definite propositions").  Nor did Sun 'n Fun present any evidence concerning the exchange of consideration inasmuch as Sun 'n Fun provided no evidence to suggest either (1) that as to the contract-to-provide-air-show theory, the FAA had any interest whatsoever in whether Sun 'n Fun conducted an air show or (2) that as to the contract-to-provide-security theory, the FAA lacked the power to impose this condition regardless of whether Sun 'n Fun promised to do it.  See Wolowitz v. Thoroughbred Motors, Inc., 765 So. 2d 920, 924 (Fla. 2d DCA 2000) (reversing summary judgment in the face of genuine disputes of whether party received value in exchange for promise and holding that "[a]n agreement to perform a preexisting obligation does not constitute consideration").  In sum, then, the undisputed facts show that the certificates of waiver were permits or licenses, and Sun 'n Fun failed to meet its burden to show that they instead represented a contractual bargain.  See Derogatis, 892 So. 2d at 1084; Westchester Fire Ins., 252 So. 2d at 858.

Sun 'n Fun also asserts that treating it as a contractor comports with the legislative intent behind Florida's Workers' Compensation Law.  It is not clear to us on this record that this is true, but broad appeals to legislative intent are not relevant to our review in this case.  The plain and unambiguous meaning of the statutory terms "contractor" and "contract work" require that Sun 'n Fun be performing work pursuant to a contract with a third party, and that is where our analysis of the statute ends.  See

- 12 -

Gallagher v. Manatee Cty., 927 So. 2d 914, 918-19 (Fla. 2d DCA 2006) ("When a statute is clear, courts will not look behind the statute's plain language for legislative intent . . . ." (quoting State v. Burris, 875 So. 2d 408, 410 (Fla. 2004))).

Alternatively, Sun 'n Fun argues that it is entitled to immunity based on its implied contractual obligation to visitors to the air show to provide security. Florida courts have recognized that, at least in some circumstances, a party may be a "contractor" where it undertakes an implied contractual obligation to a third person. See, e.g., Rabon v. Inn of Lake City, Inc., 693 So. 2d 1126, 1130-33 (Fla. 1st DCA 1997); Delta Air Lines, Inc. v. Cunningham, 658 So. 2d 556, 557 (Fla. 3d DCA 1995). In this case, however, Sun 'n Fun presented no summary judgment evidence from which such a contractual obligation could be inferred. On the contrary, the evidence provided to the circuit court was exclusively directed to Sun 'n Fun's relationship with the FAA. As the party moving for summary judgment, Sun 'n Fun had the burden to present facts and argument to support this claim. See generally Wal-Mart Stores, Inc. v. Boertlein, 775 So. 2d 345, 346 (Fla. 2d DCA 2000). Accordingly, Sun 'n Fun's implied contract argument provides no basis to otherwise sustain the summary judgment here.

III.

The record in this case establishes that Sun 'n Fun's relationship with the FAA was one of regulatory grace, not bargained-for exchange. Sun 'n Fun thus failed to meet its burden to establish that a contract existed as a matter of law between Sun 'n Fun and the FAA. Accordingly, the circuit court erred in granting summary judgment to Sun 'n Fun on the theory that it was immune from tort liability as a "contractor" under

- 13 -

Florida's Workers' Compensation Law.  The judgment therefore is reversed, and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.


ALTENBERND and SLEET, JJ., Concur.