DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

WILLIS A. SMITH CONSTRUCTION, INC., a corporation,

Appellant,

v.

DEBRA KEATHLEY as personal representative of the
Estate of Phillip Scott Keathley a/k/a Scott
Keathley, deceased, and THE BOARD OF TRUSTEES
OF THE UNIVERSITY OF SOUTH FLORIDA d/b/a
UNIVERSITY OF SOUTH FLORIDA,

Appellees.

No. 2D2025-1900

_____

April 24, 2026

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for
Pinellas County; Thane Covert, Senior Circuit Judge.

Michael R. D'Lugo and Andrew Willers of Wicker Smith O'Hara McCoy &
Ford, P.A., Orlando, for Appellant.

Shea T. Moxon and Thomas J. Seider of Brannock Berman & Seider,
Tampa; and Matthew M. Thomas of Graves Thomas Rotunda Injury Law
Group, Vero Beach, for Appellee Keathley.

No appearance for remaining Appellee.


SLEET, Judge.

Willis A. Smith Construction, Inc. (WASC), appeals from the trial

court's nonfinal order granting partial summary judgment in favor of

Debra Keathley as personal representative of the Estate of Philip S. Keathley on WASC's worker's compensation immunity affirmative defense raised in Ms. Keathley's negligence action.[1]  We affirm.

Pursuant to a written contract, WASC is a continuing service provider for the University of South Florida (USF).  Under that contract, WASC was restoring a structure on USF's Sarasota Campus known as the John C. Williams House.  WASC issued to West Shore Construction an open invitation to bid on subcontracting elements of the project.  West Shore and Mr. Keathley, as part owner of West Shore, accepted the invitation to bid.  Mr. Keathley was subsequently present on the job site to prepare West Shore's bid for installation of hurricane screens at Williams House.  While there, Mr. Keathley fell from a fourth-floor balcony, causing his death.  His estate sued both WASC and USF. WASC claimed workers' compensation immunity as an affirmative defense, arguing that Mr. Keathley was its statutory employee and that therefore it was immune from tort liability.

The parties filed cross-motions for summary judgment as to this affirmative defense.  WASC argued in its motion that it was "contractually required to perform work for USF" and that the work included providing a price proposal for the Williams House project. WASC maintained that it "sublet a portion of this work to Westshore," namely providing the price proposal for the installation of hurricane screens.  According to WASC, because "Keathley was working within the course and scope of his direct employment with" West Shore at the time of the accident, WASC "was Keathley's statutory employer."

---

[1] The University of South Florida is also a named defendant in the underlying litigation but is not a party to this appeal.

In her summary judgment motion, Ms. Keathley maintained that Mr. Keathley was at all times exclusively the employee of West Shore and that West Shore never had a contractual relationship with WASC. She pointed out that "Westshore was never hired for the Project, was under no obligation to submit a bid for the Project, and never did submit a bid for the Project." Furthermore, she argued that "there was no contractual privity in place, no compensation was paid, and WASC never sublet any portion of [its] work" to West Shore. She therefore maintained that WASC was not Mr. Keathley's statutory employer and was "not entitled to workers' compensation immunity under the undisputed facts of [the] case."

The trial court agreed with Ms. Keathley. Following a hearing, the court entered a written order granting partial summary judgment in Ms. Keathley's favor as to WASC's fourteenth affirmative defense. The court noted that it was undisputed that "West Shore never submitted a bid" for the hurricane screen installation subcontract and "was never hired by [WASC] or USF to install hurricane screens or to do any other part of the restoration work." The court concluded that while WASC did establish that it had a contractual obligation to USF and that as part of that contractual obligation, it was required to prepare and submit a cost proposal for the Williams House restoration project, it did not establish that it sublet any part of that contractual obligation to West Shore. The court specifically stated that "[t]he communications between [WASC] and West Shore . . . do not show that [WASC] ever requested West Shore to assume part of its obligation for preparing a price proposal for USF" or "that West Shore ever agreed to do so."

On appeal, WASC argues that this ruling was erroneous and maintains that because West Shore accepted WASC's invitation to bid,

3

Mr. Keathley "was doing work in furtherance of the interests of [WASC] and USF when the accident occurred" and that therefore it is immune from tort liability.  We disagree.

> Under section 440.10, [Florida Statutes (2010),] every employer is legally obligated to secure the payment of medical and disability benefits for any employee who is injured at work.  § 440.10(1)(a).  In exchange, the employer's liability for those benefits is made "exclusive and in place of all other liability . . . of such employer . . . to the employee."  § 440.11(1).  As a result, "employers who provide workers' compensation benefits . . . are immune from tort liability."  *Cent. Fla. Lumber Unlimited, Inc. v. Qaqish*, 12 So. 3d 766, 769 (Fla. 2d DCA 2009).

*Slora v. Sun 'N Fun Fly-In, Inc.*, 173 So. 3d 1099, 1102 (Fla. 2d DCA 2015) (footnote omitted).

"The obligation to secure payment of workers' compensation benefits and [the] concomitant immunity from tort liability extends not only to direct employers but also to certain 'statutory employers.' "  *Id.* (quoting *Qaqish*, 12 So. 3d at 769).  Section 440.10(1)(b), Florida Statutes (2023), provides as follows:

> In case a contractor sublets any part or parts of his or her contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment, and the contractor shall be liable for, and shall secure, the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.

By this statutory language, "to be immune from tort liability as a contractor, a defendant's 'primary obligation in performing a job or providing a service must arise out of a contract.' "  *Slora*, 173 So. 3d at 1102 (quoting *Derogatis v. Fawcett Mem'l Hosp.*, 892 So. 2d 1079, 1083 (Fla. 2d DCA 2004)).  Additionally, the contractor must show that it "then

4

'delegated or sublet to a subcontractor' " a part of that contractual obligation. *Id.* In the instant case, it is only this second requirement that is at issue. While it is undisputed that WASC had a contract with USF for the restoration of Williams House, Ms. Keathley does not agree that it sublet part of its contractual obligation to West Shore.

In considering this question, we start with the meaning of *sublet.* "[I]n the context in which it is used [in section 440.10(1)(b)], the effect of subletting is to pass on to another an obligation under a contract for which the person so 'subletting' is primarily obligated." *Cuero v. Ryland Grp., Inc.*, 849 So. 2d 326, 328 (Fla. 2d DCA 2003) (quoting *Jones v. Fla. Power Corp.*, 72 So. 2d 285, 289 (Fla. 1954)).

WASC maintains that its contractual obligation to USF included the preparation of a price proposal for the entire Williams House project and that it sublet to West Shore the preparation of the price proposal for the installation of hurricane screens portion of the project. WASC points to nothing more than the fact that West Shore accepted its invitation to submit a bid as proof that West Shore had contractually obligated itself to prepare a price proposal for USF. But "[f]or there to be an enforceable contract, 'there must be an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained.' " *W. Constr., Inc. v. Fla. Blacktop, Inc.*, 88 So. 3d 301, 304 (Fla. 4th DCA 2012) (quoting *Savoca Masonry Co. v. Homes & Son Constr. Co.*, 542 P.2d 817, 819 (Ariz. 1975)). None of those elements are present in the instant case in a way that would establish a subcontract between WASC and West Shore.

WASC's invitation to bid indicated the project name and address, that the owner was USF, and that bids were due by April 12, 2023. A section titled *Summary* stated that "[t]his project consists of but is not

5

limited to: reroofing of the entire house, finish carpentry, painting, structural repairs, shoring, lightning protection demolition and re-installation, etc." The invitation also indicated that a "Non-Mandatory Pre-Bid" meeting would be held "at the job site" and that "all subcontractors are required, prior to bidding, to become familiar with the project location and existing site conditions, as they pertain to your scope of work" and gave directions on how to schedule a visit. Such is the entire contents of the invitation to bid.

It did not specify a particular part of the project on which the recipient would be bidding and did not guarantee the recipient the job. It provided no consideration to the recipient other than the right to submit a bid on the Williams House project. And nowhere in the invitation did it indicate that the recipient's bid would be used as part of WASC's contractually required price proposal to USF. This clearly was not a proposed contract containing "sufficient specification of terms so that" West Shore could ascertain the obligations involved. *See id.*; *see also William A. Berbusse, Jr., Inc. v. N. Broward Hosp. Dist.*, 117 So. 2d 550, 552 (Fla. 2d DCA 1960) ("The invitation to bid did not constitute an offer of a contract but only the solicitation or inducement to make offers, and it imposed of itself no liability.").

Furthermore, Mr. Keathley's accident occurred while he was *preparing* the bid, and West Shore subsequently opted not to submit a bid. Florida courts have held that even where a bid is submitted, that fact alone does not create a contract. *See W. Constr.*, 88 So. 3d at 304 ("A subcontractor's bid is 'nothing more than an offer to perform the subcontract under specified terms.' The bid does not evolve into a contract until it is accepted by the general contractor . . . ." (citation omitted) (quoting *Corbin-Dykes Elec. Co. v. Burr*, 500 P.2d 632, 633 (Ariz.

6

1972))); *see also Hoon v. Pate Constr. Co.*, 607 So. 2d 423, 426 (Fla. 4th DCA 1992) ("[N]o contract is formed when a bid is made pursuant to an invitation to bid."). Certainly if submission of a bid does not create a contract, accepting an invitation to submit a bid cannot do so.

Because the undisputed facts of this case do not support a conclusion that WASC passed on to West Shore a portion of its contractual obligation to prepare a price proposal for USF's Williams House project, the trial court did not err in granting partial summary judgment in favor of Ms. Keathley.

Affirmed.

NORTHCUTT and LABRIT, JJ., Concur.

_____

Opinion subject to revision prior to official publication.